E. D. JONES v. H. B. FRANKS, *et al.*

1. REPORT OF REFEREE; *Power of District Court.* The district court has the power to set aside, confirm or modify the report of a referee; but where important and material findings of fact are contained in the report of the, referee, which the court finds are not sustained by any evidence, it is error for the district court to confirm the report in all things and render judgment thereon.

2. MORTGAGE; *Sale to Satisfy Debt; Burden of Proof.* There is no legal inhibition on a mortgagor selling the mortgaged property to the mortgagee in satisfaction of his debt; but where the validity of such sale is in issue, the burden is upon the mortgagee to show that the sale of the mortgagor's equity was voluntarily made, that the conduct of the mortgagee in making the purchase was in all things fair and frank, and that he paid for the property what it was worth.

3. ———— *Amos v. Livingston,* 26 Kas. 106, referred to, and qualified.

*Error from Shawnee District Court.*

ACTION by *E. D. Jones*, against *H. B. Franks, Hattie B. Franks* (now Foster), and *Mary E. Franks*, commenced March 12, 1883, in the nature of a bill to redeem a chattel mortgage and two bills of sale alleged to have been intended to operate as chattel mortgages, and for an accounting, and an injunction against the disposition of the property which had been taken possession of by the defendants, pending the litigation. The original petition was against H. B. Franks and Hattie B. Franks. Mary E. Franks was brought in by a supplemental petition. At the August Term of the district court for 1883, the action was referred for trial to J. P. Greer, Esq. Said referee was directed to report his findings of fact and conclusions of law separately, and to take and state an account between the respective parties. At the same term of court, the referee returned and filed his report, which was as follows, omitting court and title:

"The undersigned referee, having been first duly sworn according to law, to faithfully and to the best of his ability try the issues joined in the above-entitled cause, and a true report to make to said court on or before the first day of September, 1883, and after having heard the allegations and proofs of the parties submitted, and arguments of counsel, does find that on the 30th day of August, 1882, the plaintiff, E. D. Jones, was the owner of a large amount of personal property then on his farm in Shawnee county, state of Kansas, and consisting of live stock, farm products and farm implements, and of the value of about $———.

"2. That at the time, the plaintiff executed to the defendant, Hattie B. Franks, a bill of sale of a portion of said property, to secure the payment of a sum of money then loaned to him by her.

"3. That the sum of money so loaned to him by her is the sum of thirteen hundred and fifty dollars, and that the plaintiff, to secure the payment thereof, with interest at the rate of twelve per cent. per annum for thirty days, and commissions for furnishing said loan, executed and delivered to said defendant, Hattie B. Franks, a bill of sale for a part of said property, for the sum of fifteen hundred dollars; that the ex-

cess over and above the thirteen hundred and fifty dollars, and the amount for which said bill of sale was given, was for interest and commissions for furnishing said loan.

"4. That on the 27th day of September, 1882, the plaintiff borrowed from the defendant, Hattie B. Franks, the further sum of about six hundred dollars, and to secure the payment thereof, with interest at the rate of twelve per cent. per annum, and commissions, he executed and delivered to her another bill of sale of part of said property, for the sum of seven hundred dollars.

"5. That on October, 1882, the plaintiff paid to H. B. Franks, who then held the bill of sale of date August 30, 1882, as agent of the defendant, Hattie B. Franks, the sum of fourteen hundred dollars, to be placed as a payment on said first-mentioned bill of sale, and that at a subsequent time fully paid and satisfied the same.

"6. That on the 11th day of January, 1883, was had a full settlement between the plaintiff and the defendant, Hattie B. Franks, which included all previous transactions had between them, except the seven hundred dollars bill of sale, which was not paid nor satisfied.

"7. That on the 11th day of January, 1883, the plaintiff executed his promissory note to the defendant, Hattie B. Franks, for the sum of seven hundred dollars, bearing interest at the rate of twelve per cent. per annum, in full satisfaction of the seven hundred dollars bill of sale of date September 27, 1882, and then borrowed of the said defendant, Hattie B. Franks, the further sum of thirteen hundred and fifty dollars, which, with interest at the rate of twelve per cent. per annum, ninety days, and certain commissions, and several small sums of money advanced to him by defendant, Hattie B. Franks, amounted to seventeen hundred and ninety-nine dollars and forty-three cents, and for which sum of money the plaintiff, E. D. Jones, made his promissory note, dated January 13, 1883, payable to the said defendant, Hattie B. Franks.

"8. That to secure the payment of the several sums of money mentioned in said promissory notes, the plaintiff gave the defendant, Hattie B. Franks, a chattel mortgage of that date, on a large amount of his personal property, consisting of live stock, wagons, farm implements, corn, oats, millet, etc., and particularly mentioned and described in said chattel mortgage.

"9. That afterward, on the 14th day of February, 1883, the plaintiff turned over to the defendant, Hattie B. Franks,

all the goods and chattels so mortgaged to her to secure the payment of said several sums of money mentioned in said promissory notes, and which said goods and chattels were left in the care of the plaintiff.

"10. That on the 19th day of February, 1883, the defendant, Hattie B. Franks, bought of the plaintiff, E. D. Jones, all the goods and chattels described in said mortgage, at the price and sum of twenty-eight hundred and seventy-four dollars, and in part payment thereof delivered up to said plaintiff the promissory note mentioned in said chattel mortgage, for the sum of seventeen hundred and ninety-nine dollars and forty-three cents, and gave a credit of three hundred and four dollars and fifty-seven cents on the seven-hundred-dollar note and still held the Kate Wilson note for three hundred and thirty dollars; the Dudley note, for one hundred fifty-two; the Frederich mortgage, forty dollars, and balance of three hundred ninety-five dollars and forty-three cents due to her on the seven-hundred-dollar note; eleven dollars paid by H. B. Franks for care of fat cattle; and three dollars sheriff's fees.

"11. That there was no fraud nor undue influence used by the defendant, Hattie B. Franks, or her agent, to induce the plaintiff Jones to sell to her the property mentioned and described in the mortgage dated January 11, 1882, and given by the plaintiff to secure the payment of the money mentioned in the two notes of that date, and given by the plaintiff to said defendant, and that the property was transferred to her at its fair value; and that she, by her agents, took possession of a part of said property, of the aggregate value of twenty-two hundred and fifty-three dollars, and disposed thereof.

"12. That the whole sum of money actually loaned to the plaintiff by the defendant, Hattie B. Franks, including the Kate Wilson note, is twenty-three hundred eighty-six dollars and seventy-five cents.

"I find as a matter of law, that the defendant, Hattie B. Franks, is entitled to recover of plaintiff, E. D. Jones, the amount of money actually loaned by her to the said plaintiff in excess of the actual value of the property secured by her of the plaintiff on the 19th day of February, and that that excess is the sum of one hundred and thirty dollars; and that she is entitled to recover said sum only after she shall surrender to said plaintiff Jones the J. Thomas note and mortgage, the Dudley note and mortgage, the Kate Wilson note and mortgage, and the seven-hundred-dollar note, dated February 11,

1883, and the note attached to the reply of the plaintiff to the answer of the defendants to the original petition of the plaintiff, marked 'Exhibit A,' and releases on the chattel mortgage all further right under and by virtue of its provisions; and that the plaintiff is not entitled to the relief prayed for in his bill; and that the plaintiff, E. D. Jones, pay one-third of the costs and expenses of these proceedings, and that the defendant, Hattie B. Franks, pay two-thirds of the costs and expenses of this proceeding."

Before the report was filed, plaintiff tendered to the referee his bill of exceptions, embracing all of the evidence adduced upon the hearing. This was duly allowed and signed by the referee as a true bill of exceptions, and returned and filed with his report. The plaintiff filed the following exceptions to the report of the referee:

"1. And now comes said plaintiff and excepts to each and every of the findings of fact made by said referee, severally, and to each and every separate part thereof, and prays that these his exceptions may be allowed.

"2. And said plaintiff further excepts to each and every conclusion of law of said referee in his report therein, severally, and prays that these his exceptions be allowed.

"3. And said plaintiff further excepts to the result reached by said referee in said report.

"4. And said plaintiff further excepts to said report, in that it does not respond fully to the order of reference.

"5. Said plaintiff further excepts to said report, in that it embraces matters not authorized by said order of reference."

Hattie B. Franks remitted the $130 found to be due her, and thereupon the defendants moved the court to confirm the referee's report. At the October Term of the court for 1883, the motion to confirm the report was sustained, and thereon judgment was entered as follows:

"It is ordered by the court, that the defendant, Hattie B. Franks, surrender to plaintiff the Guilford Dudley mortgage, with the notes secured, and also the Kate Wilson mortgage for $330; and it is also ordered that the referee be and he is hereby allowed the sum of seventy-five dollars, and that the plaintiff pay one-third thereof, and the defendant, Hattie B. Franks, two-thirds thereof; and it is hereby ordered and adjudged by the court that the plaintiff pay one-third of the

balance of the costs, and the defendant, Hattie B. Franks, two-thirds of said costs taxed in this case."

The plaintiff excepted, and brings the case here.

*G. C. Clemens,* for plaintiff in error.

*Foster & Hayward,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: After the referee filed his report with the bill of exceptions of plaintiff, containing all the evidence, the plaintiff moved for a new trial, challenging the findings of fact and conclusions of law. Thereon the court decided that the seventh finding of fact in the report of the referee was not sustained by any evidence whatever, but was contrary thereto. The court also found that the fifth finding of fact was not supported by any evidence. It refused, however, to set aside the report of the referee, or grant a new trial, but confirmed the report *in all things.* The defendant, Hattie B. Franks, then remitted the sum of $130 found to be due her from the plaintiff.

The ruling of the court confirming in all things the referee's report cannot be sustained. Two important and material findings in the report have no evidence whereon to rest, and yet these findings are approved, as well as those supported by the evidence. It is impossible, therefore, to determine whether the judgment rests upon the findings of fact supported by evidence, or upon the erroneous findings which ought to have been wholly disregarded.

As the referee is an officer of the court, the court can set aside, or modify, or confirm his report, (*Hottenstein v. Conrad,* 9 Kas. 435;) but here the court affirmed the report of the referee *in all things* after it had decided that material findings of fact were not sustained by any evidence, and then rendered judgment thereon. In this consisted the error of the district court.

As a new trial must be had in the case, it becomes important to declare the law upon the subject of the right to redeem,

where the mortgagor has conveyed to the mortgagee the equity of redemption. There is no legal inhibition on a mortgagor selling the mortgaged property to the mortgagee in satisfaction of his debt. "To give validity, however, to such a sale by a mortgagor, it must be shown that the conduct of the mortgagee was in all things fair and frank, and that he paid for the property what it was worth. He must hold out no delusive hopes; he must exercise no undue influence; he must take no advantage of the fears or poverty of the other party. Any indirection or obliquity of conduct is fatal to his title. Every doubt will be resolved against him. Where confidential relations and the means of oppression exist, the scrutiny is severer than in cases of a different character. The form of the instruments employed is immaterial. That the mortgagor knowingly surrendered and never intended to reclaim, is of no consequence. If there is vice in the transaction, the law, while it will secure to the mortgagee his debt with interest, will compel him to give back that which he has taken with unclean hands. Public policy, sound morals, and the protection due to those whose property is thus involved, require that such should be the law." ( *Villa v. Rodriguez,* 79 U. S. 323 ; 2 White & Tudor's Leading Cases in Equity, pt. 2, 4th ed., 1984–6 ; *Perkins v. Drye,* 3 Dana, 170.)

Counsel for defendants refer to *Amos v. Livingston,* 26 Kas. 106, as announcing a contrary doctrine. The circumstances of that case fully support the judgment of the trial court as affirmed by this court, within the principles above announced ; but a portion of the language of the opinion is not approved, and the third part of the syllabus should be limited and qualified. Where the mortgagee takes the mortgaged property in satisfaction of his debt, the burden is upon him to show that the sale or release of the mortgagor's equity was made willingly, that the conduct of the mortgagee was in all things fair and frank, and that he paid for the property what it was worth. There was some evidence introduced before the referee, that certain property was included in the chattel mortgage not in the possession of plaintiff, and that the defendants took advan-

tage of the fears of plaintiff in making the alleged purchase. If it shall appear upon another trial that such was the case, the law will not uphold a sale made by the mortgagor under such circumstances.

As the answer set forth that the plaintiff "proposed in part payment of his indebtedness to sell absolutely at designated and agreed prices" the mortgaged property; that "said property was purchased in part payment of said indebtedness;" that "plaintiff has not owned any part of said property, or interest in the same, since February 19, 1883," and also alleged "that the defendants, nor either of them, deprived the plaintiff of any part of his property, save as he has done voluntarily and for which they paid him such price and prices. as were fair and he agreed to take," we think sufficient facts were therein alleged, if the same shall be established within the principles herein announced, to sustain the purchase of the property embraced within the mortgage. At most, the statements in the answer are defective only. A reply has been filed, and the answer has not been attacked either by demurrer or motion.

The judgment of the district court will be reversed, and the case remanded for a new trial.

All the Justices concurring.