[No. 19431. Department One. January 8, 1926.]

NORTHWEST HAY ASSOCIATION, *Appellant*, v. J. A. SLAYTON et al., *Respondents.*

NORTHWEST HAY ASSOCIATION, *Appellant*, v. J. A. SLAYTON, *Respondent.*[1]

[1] CHATTEL MORTGAGES (69)—ACTIONS TO FORECLOSE—DEFENSES— PAYMENT. In an action to foreclose a chattel mortgage on a crop, brought by an assignee, findings that the assignee had agreed to pay off the mortgage are sustained, where it appears that the crop had been contracted to the assignee, which had made advances and agreed to advance the money to pay the mortgage, which must be done before the crop could be sold.

[2] SAME (58-1)—ASSIGNMENT AND SATISFACTION—MERGER BY BILL OF SALE. Where the assignee of a chattel mortgage upon a crop takes a bill of sale of the crop from the mortgagor, the mortgage is merged, as between the parties, and it is immaterial that the bill of sale was taken under a marketing contract.

[3] SAME (69)—ACTION TO FORECLOSE—DEFENSES—ACCOUNTING FOR PROCEEDS RECEIVED. A marketing association holding the 1924 pool on a hay crop, which pool was not closed or accounted for, cannot foreclose its mortgage on the crop of a grower without first making a full accounting for the crop; and an action to foreclose is properly dismissed without prejudice to plaintiff's right of set-off or counterclaim upon such accounting.

Appeal from a judgment of the superior court for Yakima county, Nichoson, J., entered January 24, 1925, upon findings in favor of defendants, in consolidated

[1]Reported in 242 Pac. 354.

actions to foreclose chattel mortgages, tried to the court. Affirmed.

*A. C. Cherry*, for appellant.

*H. J. Snively*, for respondent.

HOLCOMB, J.—Two cases were consolidated herein for trial and for appeal, it being agreed that all evidence relevant to either case should be considered as introduced in such case, but each case to stand upon its own merits.

The first case was brought by appellant against J. A. Slayton and A. C. Slayton *et ux.* to reform and foreclose a mortgage executed by J. A. Slayton and A. C. Slayton on June 18, 1923, to the Wapato Trading Company, to secure a note for $222, and future advances.

The scrivener, by inadvertence and mistake, made the note payable to W. N. Luby, the copartner and active manager of the Wapato Trading Company, mortgagee; and inadvertently failed to include the 1923 hay crop in the mortgage, although the land upon which the hay crop was grown was described. There is no dispute between the parties,—in fact the mortgagor, Slayton, expressly declared that the Wapato Trading Company had the mortgage on the 1923 crop. He also insisted that the mortgage be satisfied.

After general denials to certain allegations of the complaint, respondents affirmatively alleged that the mortgage indebtedness was that of J. A. Slayton individually, that A. C. Slayton and his wife were but nominally parties to the note and mortgage; that the association agreed to pay the note and mortgage, and did pay the same and charged it to the account of J. A. Slayton; that the association bought from respondent J. A. Slayton, all the hay produced or ac-

quired by him during the years 1923 to 1927, both inclusive, and that title thereto passed to the association upon delivery, constructive or actual; that, by virtue of the marketing contract, respondents sold and delivered to appellant 297 tons of the 1923 hay crop of the reasonable value of $3,564; that appellant had received actual and constructive delivery of 261 tons of the 1923 hay crop; that appellant had neglected to account or pay for the hay; that it was necessary to have an accounting between the parties; that the moneys advanced to appellant, J. A. Slayton, would not be payable until the hay delivered by him was accounted for; that the contract provided for the pooling of the hay and paying to the growers on a proportional basis; that appellant had never made an accounting for the 1923 hay, and that the pools for 1924 had not been closed, or the 1924 hay sold.

For reply, appellant denied certain of these allegations, and alleged that it was a non-profit cooperative marketing association, organized for the purpose of marketing the hay of its members on a cooperative basis. It further alleged the execution, terms and conditions of the marketing contract; that respondents were not entitled to any credit for any hay, except as provided by the contract; that Slayton had delivered only 115.235 tons of 1923 hay, and only 39.815 tons of 1924 hay to appellant, and refused to deliver his other 1923 hay and 1924 hay; that appellant had duly accounted to J. A. Slayton for all the 1923 hay delivered to it to be marketed; that he was entitled to no credits except those given him, and no credit whatever upon any of the indebtedness sued for in the complaint. Appellant admitted that the 1924 hay pools had not been closed; alleged that it was impossible to close such pools until the hay had been sold; denied that respondents were entitled to any credit or payment on account

of the 1924 pools, and set forth generally the advances which had been made in addition to those sued for.

The second case was brought by appellant to foreclose a chattel mortgage executed in its favor on June 3, 1924, by J. A. Slayton, to secure a note for $240, and future advances. This mortgage, among other things, contains the following provisions:

"Said mortgagor will properly attend to, care for, irrigate and protect all said mortgaged hay crops until the same shall be ready for harvesting; and then harvest and properly prepare the same for market, and when so prepared, forthwith deliver the same to the mortgagee to be by it sold and disposed of as provided by the certain cooperative marketing contract heretofore made and entered into by and between said parties, and now in full force and effect. It being specifically covenanted and agreed that this mortgage shall not in any manner invalidate, waive, or set aside said marketing contract, and that the same, together with this mortgage, shall continue in full force and effect; and that upon the harvesting of said mortgaged crops, the mortgagee, its successors and assigns, shall be entitled to the immediate possession of the same as provided by said marketing agreement."

"That no act on the part of the mortgagee herein authorized to be done shall in any way affect the lien of this mortgage or the right of the mortgagee, its successors or assigns, to foreclose the same."

The defense to this action and the subsequent pleadings are practically the same as to the first note and mortgage, except that there are no allegations as to any agreement of appellant to pay and discharge the mortgage of June 3, 1924.

Judgment of dismissal in the first case was granted, but with the provision that it should not prejudice any right of action appellant might have in any proper proceeding to recover, offset, or counter-claim the amount paid for the mortgage sued on in the action.

In the second case, the judgment of dismissal provides that the judgment shall not prejudice any right of action appellant may have in any proper case to recover, counter-claim, or offset the amounts set forth in appellant's complaint, in so far as they may be established in such proceeding.

[1]   In the first case the pleadings, contentions and evidence of respondent were to the effect that appellant had promised J. A. Slayton to purchase and discharge the Wapato Trading Company note and mortgage, and having made such promise, it could not take an assignment of the same.

Appellant contends that there is no merit in the above contention that appellant cannot foreclose the Wapato Trading Company mortgage, because of the alleged agreement on its part to pay and discharge the same.

The overwhelming evidence is contrary to appellant's contention.   After the contract had been entered into between appellant and respondent, an application was made for advances by Slayton, and accepted by appellant, in which, among other things, the statement was made that the hay was mortgaged for the amount of $435, which was the approximate amount of the Wapato Trading Company mortgage at that time, and that the Indian Agency, which had control of the land rented by respondent, had a claim for rent of $640, and some other items were included, which brought the total to $1,188.   Appellant was then informed that there was $100 yet due respondent under an agreed advance of $4 for the hay contracted, which was given him.   The notations on the application for advances also showed that the advance was $4 per ton.   These items, with some others which were necessary to be paid, and were included therein, together with a small interest charge, aggregated $1,290.15.   The statement sent to the grower

(Slayton) of the 1923 pool, and also the ledger account of Slayton's 1923 pool both showed that advances aggregating $1,290.15 were made, and charged to respondent.

There can be no doubt upon the above documentary evidence, as well as other oral testimony, that appellant had agreed to pay the Wapato Trading Company mortgage, which was, in fact, a first mortgage against the hay crop, and was necessary to be paid; and it is natural that Slayton should insist that it be paid, so that he would not be amenable to the law for selling mortgaged property. Neither could appellant get clear title to the hay until it had been paid.

[2] An additional and all-sufficient reason, and the one adopted by the trial court in holding that the mortgage could not be foreclosed, was that appellant took a bill of sale from respondents for the hay contracted on October 11, 1923, caused it to be recorded on October 19, 1923, and thus became the owner thereof.

This manifestly merged the incumbrance in the ownership, and as the trial court said, one cannot be at the same time owner and incumbrancer.

Appellant strenuously contends that this transaction did not merge the incumbrance into the title, because appellant took the bill of sale under and pursuant to the terms of the marketing contract.

We deem it unnecessary in this discussion to set out, analyze and construe the marketing contract. It is immaterial as to what its terms were. When appellant took complete title, it merged the mortgage in the title. Appellant cannot stand in both positions, mortgagee and owner.

[3] The second action, that upon the mortgage given directly to appellant covering the hay crop of 1924, is somewhat different.

But in this case it appears that the 1924 pool is not

closed; that there are 94 tons of the 1924 crop still on the place where it was grown, upon all of which appellant has a lien, and upon the proceeds thereof.

We agree with the trial court that appellant cannot pick out a few of its demands, as shown by the record, against respondent, and enforce them, and make the whole mortgaged crop subject thereto without accounting to respondent for the crop. That is what the trial court held. The judgment of dismissal in the case preserves all rights of the parties in that respect.

Having carefully examined the record, we are satisfied that the judgments in both cases are correct, and they are affirmed.

TOLMAN, C. J., ASKREN, FULLERTON, and PARKER, JJ., concur.