### HANSEN v. DANIELS et al.

No. 4616. Decided June 14, 1928. (272 P. 941.)
Rehearing Denied December 19, 1928.

144

*A. H. Christenson,* of Provo, for plaintiff.

*Shirley S. Atkin,* of Milford, for defendants.

*Lewis Larson,* of Manti, for appellant.

*Will L. Hoyt,* of Nephi, for respondent Bank.

GIDEON, J.

The plaintiff, J. N. Hansen, on or about April 6, 1925, brought this action to foreclose a chattel mortgage on certain sheep. The mortgage sought to be foreclosed was executed by defendant Chris Daniels May 21, 1921, as mortgagor, and J. N. Hansen, as mortgagee, but was not filed for record until May 19, 1923. Daniels and his wife, the First National Bank of Nephi, and John K. Madsen were made defendants in the action. The allegations of the complaint are the usual allegations found in actions to foreclose chattel mortgages, with the additional allegations that the defendants claimed some interest in the property but that such interests are subsequent and inferior to the interest of plaintiff. John K. Madsen, by answer and cross-complaint, claimed to be the owner of the sheep in controversy. Lillian Daniels, wife of defendant Chris Daniels, interpleaded in the action and claimed a half interest in the sheep. The First National Bank of Nephi, in a cross-complaint and counterclaim, sought to foreclose a chattel mortgage held by it against the same sheep.

It appears from the court's findings (and it is not disputed) that on March 24, 1925, the defendant bank took possession of the sheep and had possession of the same at the date of the institution of the action by plaintiff. Thereafter, on April 9, 1925, all the parties to the action entered into a stipulation by the terms of which the sheep were sold and the money received for the same paid to the clerk of the court, there to await the determination of the rights of the parties. It is provided in that stipulation that the sale made under the same should not be considered as a mortgage foreclosure sale, and that the stipulation to make such sale should in no way constitute a waiver of the rights, claims, liens, or interests of the parties or any of them to the proceeds of the sale of said sheep.

The case was tried to the court without a jury. Judgment was entered awarding and giving to the defendant bank the entire proceeds realized from the sale of the sheep. The judgment also determined the rights between the parties as against each other.

Defendant Madsen appeals. Plaintiff Hansen, it seems, gave notice of appeal. He has not, however, prosecuted the same by assignment of errors or by filing abstracts or briefs. Neither was he represented at the oral argument. None of the other parties to the action appeals. The controversy here, then, is between defendant Madsen as appellant and the First National Bank of Nephi as respondent.

There is before us a voluminuos record of the proceedings had and testimony and evidence offered and given in the case, consisting of more than 700 typewritten pages. We shall refer to such parts only of that record as relate to the controversy between appellant and respondent in this court. However, a brief statement of the relationship of the parties is probably necessary for the proper understanding of the controversy between appellant and respondent.

The mortgage sought to be foreclosed by the bank is dated November 15, 1924. This mortgage was a renewal

of a previous mortgage dated August 31, 1923, and was given to secure the bank for the same indebtedness as was secured by the prior mortgage. Both mortgages were executed by Chris Daniels, first party, and the First National Bank of Nephi, party of the second part. The mortgage in controversy is to secure an indebtedness of $1,227.50 evidenced by a promissory note dated September 17, 1924. The trial court found that this mortgage was filed for record in the county recorder's office of Sanpete county March 10, 1925. This finding is challenged by appellant. The facts respecting that matter, however, seem to be undisputed, namely, that the mortgage duly signed and acknowledged, together with a carbon copy unsigned and uncertified, was sent to the county recorder on November 21, 1924. The original mortgage shows that it was numbered, filed, and indexed by the recorder on November 21, 1924. The recorder, however, returned the original mortgage to the bank and retained the unsigned and uncertified copy. Later, upon discovery of this fact, the respondent bank, on March 10, 1925, again deposited the original mortgage with the county recorder. However, in our judgment the date of the filing of this mortgage is not material, for the reason that there is no claim made on the part of appellant that any interest or claim that he had in the sheep was acquired or came into existence after November 15, 1924, the date of the mortgage. The trial court found, and it is undisputed, that in the fall of 1919 appellant agreed to sell and did sell to Chris Daniels and Lillian Daniels, his wife, 105 head of old ewes and 2 bucks at the agreed price of $2,500. These sheep were delivered to the purchaser, and the survivors of that flock of sheep, together with the increase, constitute the herd of sheep mentioned in the bank's mortgage. To secure the payment of $1,000 of the purchase price of these sheep, Chris Daniels and his wife gave to Madsen a chattel mortgage on the sheep so sold by him and purchased by Daniels and wife. This mortgage bears date of December 2, 1919, and was thereafter, on December 4, 1919, filed in the office of the county

recorder of Sanpete county. There is a finding that the affidavit required by our chattel mortgage statute was not signed by Madsen and for that reason the mortgage was invalid. Considerable reliance is had upon this mortgage as being notice to subsequent purchasers and incumbrancers. As we view this record, as will later appear, any rights which appellant had in the sheep by reason of that mortgage were merged in his repossession of the property during the year 1924, and as between the parties thereto the mortgage ceased to have any legal existence. Chris Daniels executed an additional or other mortgage to Hansen, and the trial court in its judgment gave Hansen a personal judgment against Daniels and his wife, but denied him the right to foreclose his mortgage against the sheep in controversy. Hansen having abandoned his appeal, if he ever took one, and neither Daniels nor his wife having appealed, it is not necessary to here consider the claims of either Hansen or Daniels and his wife.

Appellant, the mortgagee in the mortgage executed December 2, 1919, neglected and failed to comply with the provisions of Comp. Laws Utah 1917, § 474. That is, he failed to file a renewal affidavit with the county recorder of Sanpete county within 30 days after the expiration of the term of three years from the date of the filing of the mortgage. It is provided in that section that when a mortgagee fails to file such renewal affidavit within the time therein specified the mortgage "shall be void as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith." Apparently it is appellant's contention that, notwithstanding the fact that the mortgage was thus void as against the bank as a subsequent incumbrancer, the mortgage was, nevertheless, notice of any interest or claim that appellant might have in such sheep. In other words, that the fact that the mortgage was thus filed for record was sufficient to put all subsequent purchasers or incumbrancers upon inquiry to ascertain what interest, if any, the appellant had in the

sheep. The statute provides that the mortgage shall be void as against creditors by reason of failure to file the renewal affidavit. It is somewhat inconsistent to argue that a void instrument, declared by statute to be void, is notice to any one of its contents or of what the parties to that void instrument claim with respect to the property described in such void instrument. As will be hereinafter further noted, the trial court found that the respondent bank had neither actual nor constructive notice of the claim of appellant to any interest in the property at the date of the execution of the mortgage sought to be foreclosed by the bank. We are not to be understood as holding that a mortgagee who takes security after the expiration of the renewal period of the mortgage with actual knowledge of the prior mortgage can avail himself of a failure to file affidavit. The fact here, as found by the trial court, is that the bank had no actual or constructive notice of any adverse claim to the sheep.

However, the claim of appellant that he owned the sheep in controversy is not founded upon any right given him by the mortgage of December 2, 1919, and is inconsistent with a later claim of ownership which we shall now consider. This later claim is based upon subsequent transactions had between him and defendant Chris Daniels and wife respecting the ownership of the sheep in controversy. It appears that Madsen is the owner of other sheep that run upon the public domain near the home of Daniels and wife. On June 1, 1924, it is conceded that Daniels had possession of the sheep and had them on his farm near Moroni, Utah. Notwithstanding the fact that the bank's prior mortgage was then in full force and effect, under some arrangement the sheep were resold by Daniels and wife to Madsen in satisfaction of the balance remaining due on the original indebtedness for the purchase of the sheep in the fall of 1919. On the same day, namely, June 1, 1924, Madsen resold the sheep to Daniels and his wife at an agreed price under a conditional sale contract. The price specified in the contract was the amount of the balance due Madsen on the

original sale. The sheep remained in the possession of Daniels until July 1, 1924, at which time they were turned over to Madsen. They were commingled with Madsen's sheep and kept in his herd on the range for which he held a permit until October 10, 1924. It also appears, and the trial court so found, that the defendant Daniels paid to appellant what is designated as the herd bill for the sheep from July 1 to October 10, 1924. On October 10, 1924, the sheep were again returned to the defendants Daniels and were in their possession at the time of the execution of the renewal mortgage which respondent seeks in this action by its answer and cross-complaint to foreclose. The conditional sale contract was not acknowledged, nor was it recorded, until March 25, 1925.

Comp. Laws Utah 1917, § 130, as amended by Laws Utah 1921, c. 3, is as follows:

"All leases, and all contracts of sale or agreements to sell in which the title is retained in the vendor until the purchase price is paid in whole or [in] part of more than twenty-five head of horses, twenty-five head of cattle, or one hundred head of sheep, shall be in writing, and must be acknowledged in the same manner as grants of real property, and such leases or agreements or copies thereof duly certified by an officer authorized by the laws of the State of Utah to take acknowledgments to conveyances of real property, shall be filed in the office of the county recorder of the county in which the lessee, or purchaser of the property, as the case may be, resides; and a failure to comply with the provisions of this section shall render the interest of the lessor or vendor as the case may be in said property, subject, subsequent and subordinate to the claims of the creditors of the lessee, or purchaser as the case may be, and of subsequent purchasers and encumbrancers of the property in good faith and for value."

The trial court found that the respondent bank at the date of taking the mortgage had no knowledge, either actual or

constructive, of the claim of appellant to the sheep in controversy. That finding is challenged by the appellant as being contrary to and against the great weight of the evidence. The testimony respecting any notice other than the filing of the mortgage of December 2, 1919, which it is claimed respondent had of appellant's interest in the sheep is not very conclusive on the part of the witnesses for appellant. Neither is the testimony given by witnesses for respondent with respect to such notice very conclusive. The first mortgage to secure the indebtedness of the bank was given on or about August 31, 1923. The conversation respecting the notice, if any notice was given, was had between Chris Daniels and Mont Whitmore, president of the respondent bank. The testimony of Mr. Daniels on direct was not positive. He stated that he was not sure that he had said anything in that conversation about the interest of Madsen in the sheep. On cross-examination he was more definite in claiming that he did make some statement at that time to the president of the bank with respect to the fact that Madsen had some interest in or claim to the sheep. Upon the other hand, the president of the bank testified that he had no recollection of any statements being made to him as to any one else except the defendants Daniels having or claiming any interest in the sheep. In that regard it is recited in the chattel mortgage sought to be foreclosed and in the one of which it was a renewal that "the party of the first part [Daniels] does hereby covenant that the property aforesaid is owned by the said party of the first part and that the whole thereof is free and clear from all liens, claims, or incumbrances of any nature whatsoever." This chattel mortgage, at the date of the execution of the same, was verified by Daniels as required by statute. Any testimony of Daniels that he notified the bank of others claiming an interest in the sheep, as between Daniels and the bank, would tend to vary the terms of a written covenant in the mortgage, and, as between those parties, would be inadmissible. In addition, the defendant Chris Daniels testified that he informed

the plaintiff Hansen at the date he executed the mortgage to him that Madsen had a mortgage on the sheep. That testimony is flatly denied by Hansen, and the further statement is made by Hansen that he examined the sheep and was at no time informed that any one other than Daniels had any interest in the sheep. The entire record casts doubt on Daniels' claim that he informed the bank of Madsen's claim to the sheep. Daniels was in possession of the sheep. There has in fact been no change of possession after December 2, 1919. True, Madsen took the sheep and put them into his herd on or about July 1, 1924. He admittedly took the same as the agent for hire of Daniels. The undisputed testimony is that Daniels contracted to pay for herding the sheep from July 1 to October 10, 1924. At the date of the execution of the first mortgage on or about August 31, 1923, the respondent bank was increasing a loan then owing to it by Daniels. The amount of the existing indebtedness and the additional amount loaned was included in the note secured by that mortgage. This amount is the same amount evidenced by the note of September 17, 1924, and secured by the mortgage sought to be foreclosed. The fact that the bank increased its loan to Daniels and took this security is a circumstance at least to be considered in determining the fact of whether the respondent bank had notice of the claim of the appellant to the sheep described in the mortgage. The testimony in the record before us is such that we would not be justified in holding the finding of the court below, that respondent had no notice, either actual or constructive, of the claim of appellant, should be set aside as contrary to the weight of the evidence.

It is conceded that on March 24, 1925, under the provisions of its chattel mortgage, respondent took possession of the sheep described in the mortgage and which are in controversy here. Thereafter, and on March 25, 1925, Madsen acknowledged and filed his conditional sale contract in the office of the county recorder of Sanpete county. On March 30, 1925, the respondent bank insti-

tuted an action upon the promissory note executed by Daniels and his wife evidencing a past-due indebtedness not included within the mortgage indebtedness. On said date the bank applied for and received a writ of attachment against the property of Daniels and wife, and a writ of garnishment was served upon one Jensen, who was in possession of the sheep as the agent of the bank, and also upon the bank levying upon and attaching all interest the defendants Daniels and wife had in the sheep or other property then in the possession of Jensen as the agent of the bank. Thereafter, on April 11, 1925, and immediately after the amount received for the sale of the sheep under the stipulation hereinbefore noted, the respondent bank caused writs of garnishment to be served upon the clerk of the court in an attempt to levy upon all right and interest of the defendants Daniels and wife in and to the proceeds of the sale of the sheep under the stipulation of the parties.

The trial court concluded that the bank was entitled, by reason of its chattel mortgage, to have paid to it sufficient of the proceeds to satisfy the amount of said mortgage and costs in connection with the same. That conclusion of the court is fully justified by the evidence contained in the record.

The court was also of the opinion, and so held in its conclusions of law, that the respondent bank, by virtue of its garnishments and liens created thereby, was entitled to receive any amount left after satisfying the mortgage judgment. That conclusion of the court is assailed as being contrary to the findings and contrary to law.

It is undisputed that the bank was a contract creditor of the mortgagor Daniels. The evidence of its debt was the note upon which the garnishment proceedings were founded. In other words the bank had no direct or specific lien against any property of the debtor Daniels unless or until it acquired such by virtue of the garnishment proceedings. For a definition of the term "creditors at large" or "general cred-

itors," see 15 C. J. 1373. The indebtedness evidenced by the unsecured note was a renewal of an existing debt, and, as found by the court, the principal part of such debt was incurred as early as the year 1921. It is likewise undisputed, and the court so found, that the conditional sale contract held by the appellant Madsen and dated June 1, 1924, was recorded on March 25, 1925. The court also found that the writ of garnishment was not issued until March 30, 1925, and was on that date served upon the person in possession of the sheep and later, on or about April 11th, served also upon the clerk of the court as custodian of the money received from the sale of the sheep.

By section 130, supra, as amended, it is provided that failure to acknowledge and record a contract of conditional sale, or a certified copy thereof, in the office of the county recorder in the county wherein the lessee or purchaser resides, shall render the interest or claim of the lessor or vendor, as the case may be, "subject, subsequent and subordinate to the claims of creditors of the lessee or purchaser, as the case may be, and all subsequent purchasers and encumbrancers of the property in good faith and for value." As we have indicated, the respondent bank was a general creditor of the defendants Daniels. The trial court was of the view that extending time for the payment of a past-due and pre-existing debt subsequent to June 1, 1924, the date of the conditional sale agreement, and prior to March 25, 1925, the date that the agreement was recorded, gave to the respondent bank a claim to the proceeds realized from the sale of the sheep superior to the claim of the appellant Madsen. Whether the court was right in that conclusion presents the most difficult question in the case.

Respondent relies on the opinion of this court in *Volker Lumber Co.* v. *Utah & Oregon Lumber Co.*, 45 Utah 603, 148 P. 365, Ann. Cas. 1917D, 1158. In that case the court was considering the claims of creditors whose debts were incurred or increased subsequent to the date of the chattel mortgage and prior to the recordation of the same. The

statute provided that no mortgage shall be valid "against the rights and interest of any person other than the parties thereto" unless possession of the property be taken or the mortgage be recorded as the statute provided. In that opinion it is said:

"It is perhaps true that the weight of authority, under statutes somewhat different from ours, is to the effect that only those creditors who have established, and therefore assert, liens against the mortgaged property can assail the validity of an unrecorded mortgage upon that ground."

It is also said in that opinion:

"It might be that, if this section stood alone, in view of the decisions, it could be contended, with much force that 'the rights and interest of any person' mentioned in the statute refers to some specific rights and interests in or to the property mortgaged. If we construe and apply the foregoing language, however, in connection with what is said in section 2473 [Comp. Laws 1907] supra, relative to what is meant by the term 'creditors,' then whatever doubt remains vanishes. The term 'creditors,' as used in our statute, therefore, includes all persons who may have claims against the mortgagor at any time while the mortgaged goods and chattels remain in his possession."

Section 2473, quoted in the opinion and upon which reliance is had for a definition of the term "creditor," was repealed by the enactment of chapter 121, Laws Utah 1917. No substitute for nor similar act to said section 2473 has, so far as we are advised, been enacted by the Legislature since the repeal of 1917. We therefore now have in the statute no definition of the term "creditors" as that word was used in the statute at the date the opinion in *Volker Lumber Co.* v. *Utah & Oregon Lumber Co.* was written. There is nothing in section 130 quoted, or elsewhere in the statute, to indicate that the term "creditors" as used in said section has any other or different meaning than that contained in the

general law applicable to the construction of similar statutes. The conditional sale agreement concededly was binding between the appellant Madsen and the defendant Daniels and his wife. The recording of that agreement on March 25, 1925, gave notice to the respondent bank of the appellant's claim. The respondent bank did not initiate its lien or claim of lien by garnishment until March 30, 1925. Ruled by what is said in *Volker Lumber Co.* v. *Utah & Oregon Lumber Co.* to be the weight of authority, it follows that the trial court was in error, under the facts appearing in this record, in holding the bank's claim superior to that of the appellant Madsen in so far as any balance remained after paying the bank its mortgage judgment.

It is impossible to reconcile the opinions of the courts of the various states in the construction of statutes similar to our section 130, supra. In many cases the decisions are doubtless influenced by the superior equities appearing in the particular actions under review. We are satisfied, however, that in the absence of fraud or superior equities on behalf of a creditor the claim of a mortgagee in an unrecorded mortgage, or, as in this case, a vendor in a conditional sale agreement, is superior to the right of a general creditor who has not acquired a lien by attachment or otherwise prior to the recording of such mortgage or agreement of conditional sale. The record in this case shows no superior equities in the respondent bank. On the contrary, the equities are with the appellant. It is conceded that the appellant was the owner of the sheep sold to to the defendant Daniels in 1919. It is also undisputed that the sheep in controversy here were the few remaining sheep sold in 1919 and the increase from the original flock sold to the defendant Daniels in 1919. It is olso undisputed that appellant had never received the full purchase price contracted to be paid for those sheep. It is likewise undisputed that he repossessed the sheep under an agreement in full satisfaction of the then indebtedness on June 1, 1924. On that date the conditional sale agreement was made, and

nothing was thereafter paid on the amount which Daniels undertook and agreed to pay by the terms of that conditional sale agreement.

Among the authorities supporting the general rule above stated may be cited the following: *Pacific Coast Biscuit Co.* v. *Perry*, 77 Wash. 352, 137 P. 483; *Watson* v. *First National Bank of Clarkston*, 82 Wash. 65, 143 P. 451; *First National Bank of Albuquerque* v. *Haverkampf*, 16 N. M. 497, 121 P. 31; *Moore* v. *Masterson*, 19 Tex. Civ. App. 308, 46 S. W. 855; *Forrester* v. *Kearney National Bank*, 49 Neb. 655, 68 N. W. 1059; *People's Savings Bank* v. *Bates*, 120 U. S. 556, 7 S. Ct. 679, 30 L. Ed. 754. See, also, 11 C. J. p. 515, § 192.

From what has been said it follows that the judgment of the court below decreeing that the remainder of the funds in the hands of the clerk after paying the mortgage judgment be awarded to the respondent bank must be reversed. In all other respects the judgment is affirmed. The cause is therefore remanded to the district court of Sanpete county, with directions to that court to alter or modify its conclusions of law and judgment so as to make the same conform to the views herein expressed. Appellant to recover costs.

THURMAN, C. J., and CHERRY, STRAUP, and HANSEN, JJ., concur.