No. 45,459

PEOPLES STATE BANK, a Corporation, *Appellee,* v. MERRY "A" DRILL-ING, INC., a Corporation, MOUNTAIN IRON AND SUPPLY COMPANY, a Corporation, and INTERCONTINENTAL LEASING, INC., a Corporation, *Appellants.*

(460 P. 2d 521)

Opinion filed November 8, 1969.

*Richard Stavely,* of Wichita, argued the cause, and *Lee Turner, J. Eugene Balloun,* and *Max E. Eberhart,* all of Great Bend, were with him on the briefs for the appellants.

*Tudor Hampton,* of Great Bend, argued the cause, and *Jerry Ward,* of Great Bend, was with him on the briefs for the appellee.

The opinion of the court was delivered by

KAUL, J.: Plaintiff-appellee, Peoples State Bank, instituted this action, originally in replevin, to recover possession from defendants-appellants of an oil rig and equipment in which plaintiff claimed a special ownership by virtue of a chattel mortgage, executed by Joe K. Branum, d/b/a Terrel Producing and Drilling Company. When

the action was filed plaintiff gave a bond for possession; defendant Mountain Iron & Supply Company, who had taken possession, gave a redelivery bond and thereafter caused the property to be sold. The property having been sold, plaintiff filed an amended petition seeking recovery of the amount claimed under the notes and mortgages and interest, costs and attorney fees.

Defendants, Mountain Iron & Supply Company and Intercontinental Leasing, Inc., filed separate answers alleging rights of possession by virtue of chattel mortgages held by each of them.

As thus framed, after a pretrial conference, the action proceeded to trial without a jury.

Defendants have appealed from an adverse judgment.

For convenience, the appellee will be referred to as plaintiff or bank, the appellants as Mountain and Intercontinental, or collectively as defendants, and Joe K. Branum, d/b/a Terrel Producing and Drilling Company, as Branum.

The overall issue is whether the chattel mortgages of defendants, each of which was acknowledged at the time of execution to be junior to a chattel mortgage held by the bank, were raised to a status of priority by the conduct of the bank in its transactions with Joe and Mary Branum.

On September 13, 1961, Branum purchased from the bank an oil rig and equipment which will be referred to as Rig No. 1. The purchase price was $25,000. Branum made a down payment of $5,000 and executed a note and mortgage on the rig for the balance.

Payments were made on the old note and a renewal note was executed which included additional advances by the bank to Branum for the purchase of equipment. Further payments were made on the renewal note.

On November 20, 1962, a renewal note and mortgage were executed in the amount of $29,000. The increase was for the purchase by Branum of two rebuilt GM diesel engines and other equipment to be placed on Rig No. 1.

The trial court found the note was reduced by payments and renewed for increases in several transactions. On the date of trial, October 31, 1966, there was a balance due of $14,866.50, which sum included interest to date.

Following his purchase of Rig No. 1 from the bank, Branum bought two other rigs from defendants which are referred to as

Rigs No. 2 and No. 3. Apparently, defendants retained a security interest in rigs No. 2 and No. 3 as collateral to secure the balance of the purchase price.

On June 8, 1962, Branum executed a note in favor of Intercontinental and a mortgage covering a Model U-10 drawworks, Serial No. 105, and a schedule of equipment. The mortgage provided that it was junior and subordinate to the first mortgage of the bank.

On August 31, 1964, Branum executed a promissory note to Mountain and a mortgage covering a Model U-10 Unit, Serial No. 105, with schedule attached. This mortgage also provided that it was subject and junior to the now existing mortgage held by the bank.

In 1965 Branum became so involved in financial difficulties that he was unable to carry on the drilling contracts under which he was obligated. An arrangement was arrived at between Branum, his wife Mary, and the bank to the effect that the rig was to be used by Branum's wife Mary, d/b/a Merry "A" Drilling, Inc., so that Mary could complete the contracts without the interference of her husband's creditors. Actual possession never left the control of Joe Branum and he continued to operate the rig.

The trial court found the arrangement was carried out as follows: On March 10, 1965, Mary Branum, d/b/a Merry "A" Drilling, Inc., executed a note and mortgage on Rig No. 1 and equipment in favor of the bank in the amount of $19,275.00, the same amount as the balance due on Branum's note to the bank at the time. On the same date, Branum executed a bill of sale with the grantee's name omitted to be held by the bank until further payment of the outstanding indebtedness was made by either Merry "A" Drilling, Inc., or Terrel Producing and Drilling Company (Branum). If payment was not made by either of them, then the bill of sale was to be the written instrument conveying title to the rig to any purchaser that the bank might find. The notes and mortgages in favor of the bank, previously executed by Branum, were not cancelled, released or delivered to Branum but remained in the bank's possession. The word "collateral" was written on the front of all of the notes involved.

On the same date, March 10, 1965, the indebtedness, evidenced by notes and mortgages, was transferred by the bank from Joe's liability ledger to Mary's. The trial court found this was accom-

plished by showing on Joe's individual liability ledger payment of a note in the amount of $19,275 and by an entry of like amount on Mary's individual ledger with a notation "Due As Spec. Chat. Mtg."

It appears that later in 1965 the financial affairs of Joe Branum deteriorated and defendants took possession first of Rigs No. 2 and No. 3 and shortly thereafter of Rig No. 1.

When the bank learned defendants had taken possession of Rig No. 1 a demand was made upon defendants for possession on August 3, 1963. The bank's demand was refused by defendants and this lawsuit followed.

Pretrial proceedings, consisting of discovery depositions and several conferences before the court, were concluded and finalized by a pretrial order, entered on September 9, 1966, in which agreed facts were set out and the issues of fact and law were carefully identified and listed.

Following the trial, the court filed comprehensive findings of fact and conclusions of law. After a motion for a new trial was heard, the court filed a further memorandum decision amending one finding of fact but otherwise overruling defendants' motion for a new trial.

The defendants do not challenge the trial court's findings of fact but direct their appeal at the conclusions of law.

On appeal defendants raise four points, three of which go to the central issue whether the original mortgages executed by Joe Branum, upon which the bank based its claim, were waived, discharged or paid prior to the filing of this action.

The three points referred to will be collectively discussed and resolved.

Defendants first contend the petition and amended petition failed to state a claim for relief because, they assert, the bank sued on the wrong mortgage. Defendants argue the bank's claim, if any, arises under the Mary A. Branum mortgage, rather than under the mortgage executed by Joe, which the defendants claim was discharged. This question was resolved by the trial court's determination that Joe's mortgage was not discharged. Under the facts as found, we believe the trial court's ruling to be correct.

The trial court made twenty-eight findings of fact, which we believe resolved all factual questions relative to the issues involved. The court found that all moneys loaned by the bank to Branum were for the rig, equipment or repairs and replacements; that the Branums

knew at all times the notes and mortgages of Joe Branum were security for the payment of the obligation of Mary A. Branum, d/b/a Merry "A" Drilling, Inc.; that the word "collateral" was written on the front of all of the notes and meant that the notes were secured by collateral in the form of chattel mortgages, and in this instance by the original note and mortgage of Joe K. Branum; that the debt of Joe K. Branum was not extinguished by the transactions between the bank and Branums; and that the bank and Branums did not intend, nor even consider, that the debt of Joe K. Branum to the bank had been paid.

The trial court concluded as a matter of law:

"The note dated September 13, 1961, and the mortgage securing said note dated October 1, 1961, executed by Joe K. Branum, d/b/a Terrel Producing and Drilling Company, to the plaintiff Bank is a valid and existing lien upon the property involved and is a first and prior lien on said property specifically described. The notes, mortgages and leases executed by Joe K. Branum and made in favor of the defendants, Mountain Iron and Supply Company and Intercontinental Leasing, Inc. are inferior, junior and subordinate to the lien of the plaintiff Bank. The plaintiff's lien covers only the property described in the plaintiff's mortgages, and does not include additions and substitutions. The note and mortgage to the plaintiff dated November 20, 1962, is a renewal note of the orginial, and the mortgage includes purchase money for replacement of engines and equipment, the same being a valid lien in favor of the plaintiff and superior to defendants as to said replaced motors and 4700 feet of 4½" drill stem pipe."

The trial court further concluded that the value of the chattels, which defendants converted and sold, exceeded the maximum amount of damages to which the bank was entitled. On this point, the court found the value of the items identified, as those covered by the bank's mortgage, of which defendants acquired possession and on which the bank had a lien, to be $16,320. The court found the balance due on Branum's note, on the date of trial, to be $14,866.50 which included interest to date of trial.

The court further found the defendants should have credit for storage, insurance and trucking in moving the rig and equipment to their yard preparatory for sale, in the amount of $1,441. The sum was stipulated to by the parties and was offset by the court against the sum found due the bank, resulting in a net judgment of $13,425.50 in favor of the plaintiff bank.

Defendants argue that the debt of Joe Branum was extinguished and the mortgage terminated by a merger of rights in the mortgagee

bank, effected by Joe's delivery of a bill of sale executed in blank during the course of the transactions between the bank and Branum on March 10, 1965.

Whether a debt is extinguished by a conveyance of the security from the mortgagor to the mortgagee is determined by the intention of the parties. The rule is stated in 15 Am. Jur. 2d, Chattel Mortgages, § 190, p. 358:

"Unless it is the intention of the parties, the passing of the interest of both the mortgagor and the mortgagee to the same person does not result in a discharge of a chattel mortgage on the theory of merger and a resultant loss of the favored position of the mortgagee. So, a merger will not be presumed because of the taking of legal title by the mortgagee or his assignee, where it is to his interest that there should be no merger. . . ."

See, also, 14 C. J. S., Chattel Mortgages, § 343, p. 994.

In the instant case the trial court specifically found no intention by the bank and Branum to extinguish and terminate the original note and mortgage. While the record discloses some inconsistency in the testimony of Joe Branum on this point, the testimony of M. A. Isern, President of the Peoples State Bank, was clear and definite. We believe the evidence quite sufficient to support the trial court's finding.

The principle that the doctrine of merger does not work a cancellation of a mortgage, unless an intention to release the mortgage is shown, is followed in Kansas. (*Rath v. Ponsor*, 114 Kan. 370, 219 Pac. 285.)

We have examined the cases cited by defendants from this and other jurisdictions. We find none which control the issues presented in the instant case. Some cases, in which a merger in the mortgagee was held to cancel the original mortgage, disclose a transfer of physical possession to mortgagee along with a bill of sale as in *Hansen v. Daniels et al.*, 73 Utah 142, 272 P. 941, or where the mortgagee recorded the bill of sale and thus became the record owner as in *Northwest Hay Association v. Slayton*, 137 Wash. 248, 242 P. 354. Other cases, where the intention of the parties to cancel the original mortgage was found, are, of course, distinguishable from the instant case.

Defendants cite cases supporting the proposition that there is no legal restraint against a mortgagor's selling the mortgaged property to the mortgagee in satisfaction of his debt. (*Jones v. Franks*, 33 Kan. 497, 6 Pac. 789, and *Amos, Adm'r, v. Livingston*, 26 Kan.

106.) We have no quarrel with the proposition as stated. However, as we have pointed out, cancellation of a mortgage by the application of the doctrine of merger will not be presumed and if applied it must be supported by a finding of intention.

We agree that the maxim "once a mortgage, always a mortgage" does not prevent a mortgagor from selling the mortgaged property to the mortgagee in satisfaction of the debt, where the parties intended that the lender should take the property in satisfaction of the debt and where the transaction was found to be fair and reasonable to both parties. The proposition is not applicable in the face of an expressed finding that the parties did not intend to cancel the original debt and mortgage.

The trial court adopted the theory that there was always a debt due the bank by Joe Branum and that by the later transactions Mary also became obligated for the same debt in addition to Joe's continuing obligation. Under the facts, we believe the trial court was correct.

A new promissory note is not payment of an old one, where each is evidence of the same debt, and the old note is retained by the payee thereof as security for the new one; and a chattel mortgage given to secure the payment of the debt, evidenced by the old note, remains as security for the payment of that debt. (*Bank v. George,* 105 Kan. 129, 181 Pac. 574; *Fourth National Bank v. Hill,* 181 Kan. 683, 314 P. 2d 312; 15 Am. Jur. 2d, Chattel Mortgages, § 196, p. 363.)

On appeal, as well as before the trial court, defendants rely heavily on *Woodman v. Hunter,* 53 Kan. 393, 36 Pac. 713. There this court reversed a trial court's holding that an old note and mortgage were not extinguished when the mortgagee surrendered the note and mortgage and a third party gave a new note and mortgage on new and different security, all without the knowledge and consent of the original mortgagor. The holding of the court is set out in paragraph two of the syllabus:

"A mortgagee of personal property who surrenders the note secured and cancels the mortgage, in consideration of the note of a third party, secured by a new mortgage, including new and different security, without the knowledge or consent of the original mortgagor, is bound by his own bargain, and cannot thereafter resort to the first mortgage as security for the debt."

Obviously, the facts in *Woodman* are clearly distinguishable from the facts as found by the trial court here. In the instant case Joe Branum, the original mortgagor, had full knowledge of the entire

transaction. The new note and mortgage by Mary covered the same, rather than a new debt and different security, and the old note and mortgage were retained by the bank and not surrendered.

Since no intention to cancel Joe's original note and mortgage was found from any of the transactions between the bank and Branums, the trial court properly concluded the bank's chattel mortgage was prior and superior to the liens of defendants.

One further point requires some attention. In its memorandum decision following the trial, the trial court included a discussion of the issues and evidence and, with reference to the transactions between the bank and Branums, commented:

". . . The plaintiff Bank did not lose its prior lien on the property specifically described in its mortgage by its transaction with Mary K. Branum. The formation of a new company was merely a subterfuge to confuse and harass the creditors of Joe K. Branum, and while it might have deterred some creditors it would hardly phase a diligent one. The debt was not paid by that transaction. The parties did not intend, nor did they even seriously consider that the debt of Joe K. Branum to the Bank had been paid. Therefore, the contention of the defendants that the original chattel mortgage given by Branum to the Bank was no longer a lien on the property described therein because the debt was paid is not accepted by this Court."

Defendants latch on to the comment of the trial court and assert that it amounts to a finding of fraudulent conduct on the part of the bank, by which it is estopped to assert any right based on the mortgage obtained from Mary since it was executed for the purpose of hindering creditors.

The bank's suit and its recovery were based on Joe's notes and mortgages, rather than on Mary's. Joe's mortgages, concerning which there was no suggestion of fraud, were executed in 1961 and 1962, long before the transaction with Mary in 1965. The validity of Joe's mortgages, if not discharged, was not affected by the subsequent transactions with Mary. We find the applicable rule stated in 37 Am. Jur. 2d, Fraudulent Conveyances, § 108, p. 790, as follows:

"If the intent of the parties at the time of transfer of the property appears to have been honest and lawful, the transaction cannot be held to have been fraudulent or illegal because of subsequent acts or conduct. . . ."

Moreover, neither of defendants alleged fraud in either of their respective answers (see K. S. A. 60-208 and 209), nor was it suggested or claimed as a defense at any of the pretrial conferences. We believe the posttrial position taken by defendants in this regard to be wholly untenable.

The judgment of the trial court is affirmed.