### JAMES H. MITCHELL & another *vs.* JOHN BLACK & another.

One who has advanced money to a merchant, to enable him to purchase merchandise, taking as security therefor, pursuant to agreement with him at the time of the advances, bills of sale from the vendors, and also, from the debtor, assignments of the bills of lading, and, upon the arrival of the merchandise, bills of sale thereof, and has afterwards allowed the debtor to sell it in the usual course of his business as if he were the owner thereof, may take possession of the merchandise at any time in order to secure his debt and such taking of possession, though at a time when the debtor is known to himself and the creditor to be insolvent, and within six months of the commencement of proceedings in insolvency, is effectual, notwithstanding *St.* 1841, *c.* 124, § 3.

ACTION OF TORT by the assignees of Perry & Mayo, insolvent debtors, against Black & Co., for the conversion of a quantity of coal and wood.   At the trial, a verdict was returned for the plaintiffs for a part of their claim, and the question, whether they should have a verdict and judgment for the remainder, as having been transferred and delivered to the defendants in violation of the insolvent laws, was reserved by *Bigelow,* J. for the consideration of the whole court upon the following evidence :

In the winter of 1849–50, Black & Co., at the request of Perry & Mayo, agreed to furnish them, by indorsing their paper, with the means of paying for the freight of cargoes of coal, which they should receive in the course of their business, provided all the cargoes so purchased should be transferred to Black & Co.

as security, and be by them consigned to Perry & Mayo for sale, and that Perry & Mayo should thus keep Black & Co. fully secured for all their indorsements. Pursuant to this agreement, Black & Co. did from time to time, until the 24th of December 1851, indorse many notes of Perry & Mayo, to a very large amount, and received from them, at the times of such indorsements, assignments of the bills of lading of the cargoes of coal, and also, upon the discharge of the cargoes, bills of sale thereof; and then consigned the cargoes to Perry & Mayo for sale. Perry & Mayo also from time to time applied to Black & Co. to indorse their notes, for the purpose of purchasing cargoes of wood, and Black & Co. consented so to do, provided that the wood so purchased should be transferred by the vendors to Black & Co., to be held as security for their indorsements, and by them consigned to Perry & Mayo for sale; and this agreement was also acted upon repeatedly by the parties. Perry & Mayo agreed to pay and did pay to Black & Co. a commission of two and a half per cent. upon their advances. No account of sales was ever asked for or rendered; no account of commissions, as due Perry & Mayo, was ever rendered or settled; and Black & Co. never had or took or demanded possession of any of said cargoes, nor exercised any control thereof, but permitted Perry & Mayo to sell and dispose of the same to their customers in the usual course of their business, to receive the proceeds thereof, and use them in the same manner, as if they had been absolute owners thereof, until the 31st of December 1851, when this course of dealing was brought to a close by Black & Co. taking possession of all the coal and wood upon the wharf of Perry & Mayo, claiming to hold it under the arrangements above stated; and Perry & Mayo then stopped payment. At the time of taking such possession, both parties knew that Perry & Mayo were insolvent. Perry & Mayo petitioned for the benefit of the insolvent laws on the 22d of January 1852.

*W. Whiting & A. C. Washburn*, for the plaintiffs. The transactions between Perry & Mayo and the defendants were inchoate and incomplete until possession of the property was taken by the defendants on the 31st of December. The defend

9*

ants were not absolute purchasers; but claimed to hold the property as security only. They were not mortgagees, there being no instrument of defeasance to their bill of sale; and there being no instrument recorded, could not set up a title as mortgagees against an assignee. *Whitaker* v. *Sumner*, 20 Pick. 404.· They can claim to hold then only as pledgees; and the right to hold as pledgees is founded on, and terminates with the actual possession of the property pledged. 2 Kent Com. (6th ed.) 581. *Ward* v. *Sumner*, 5 Pick. 60. *Bonney* v. *Amee*, 8 Pick. 236. 1 U. S. Dig. Bailment, pl. 31.

It was no part of the original agreement between the parties that Black & Co. should take possession of the property; but it was left in the hands of Perry & Mayo, to be held and disposed of in the ordinary course of business, for their own benefit; and the agreement, without delivery of possession, was void as against attaching creditors. *Bonney* v. *Amee*, 8 Pick. 238. The assignment of the bills of lading, while the cargoes were at sea, cannot be deemed equivalent to delivery of possession in this case; for if Black & Co. ever had a right, under the bills of lading, to take possession of the property within a reasonable time after its arrival, and thereby give validity to their lien as pledgees, they lost that right by taking a new title under bills of sale, and pursuant to an agreement to allow the debtors to remain in possession.

After the insolvency of the debtors, known to themselves and to their creditors, the delivery of possession and transfer then made constituted a preference, which was void under *St.* 1841, c. 124, § 3.

*S. Bartlett & L. Shaw, Jr.* for the defendants.

MERRICK, J. The plaintiffs contend that they have a right to recover in this action the entire value of the wood and coal of which the defendants took possession on the 31st of December 1851. They insist upon this claim upon the ground, that although Perry & Mayo had before that time conveyed the property to the defendants for a good consideration, by a formal bill of sale, the transaction between them was inchoate only and incomplete, because there had been no previous delivery of it,

Mitchell & another *v*. Black & another.

and because Perry & Mayo being then insolvent, and theii insolvency known to the defendants, a delivery on that day was in violation of the provisions of the statutes for the relief of insolvent debtors, and the equal distribution of their estates among their creditors, in payment of their respective debts.

It might, under other circumstances than those which are here disclosed, be important to consider that the title of tha defendants, to the wood, which is part of the property in dispute, was not acquired by any instrument of transfer to them from Perry & Mayo. But in the view which we have taken of the only question reserved by the report of the case for our deter mination, it is unnecessary to pursue that inquiry.

The conveyance to the defendants, both of the wood and coal, was absolute and unconditional in its terms. This gave to them the right, without any further act or consent of the vendors, to take possession of the property, whenever they should choose to do so. It is true that, by the agreement of the parties, the wood and coal thus conveyed were not to belong absolutely to the defendants, but were to be held by them as a mere security for the repayment of the advances they had made, and for their indemnity against the liabilities they had assumed. Under that agreement, their title to the property might be defeated by the performance of the condition upon which it was to be held ; but, until such performance, their right to take and retain possession of it, for the purposes for which it was conveyed, could not lawfully be disputed or resisted by the vendors. A delivery of the property to them was essential to the defendants, only to protect their title against the claims of other parties who, by a subsequent purchase, or by operation of law, having acquired some interest in it, should have first intervened and obtained possession of it. But there was no such intervention in fact by the plaintiffs, or by any one else, before the wood and coal were received and subjected to their own control and disposal by the defendants, on the 31st of December.

This taking possession of the property at that time by the defendants was strictly an act of their own, under the right which they had previously acquired ; and no consent, assistance

or coöperation of Perry & Mayo was necessary to authorize or justify it. Having thus lawfully obtained the actual possession of the property before any legal proceedings had been instituted against their vendors, and of course before the plaintiffs, as their assignees, could have acquired any interest in it, their title, until performance of the condition upon which it was held, was complete, unless, by operation and effect of some provision of the statutes for the relief of insolvent debtors, it was invalidated and defeated.

The particular provision under which it is insisted by the plaintiffs that the title of the defendants must fail, is contained in *St.* 1841, *c.* 124, § 3, and is in these words : " No certificate of discharge shall be granted, or, if granted, it shall be of no effect, if a debtor, within six months before the filing of the petition by or against him, being insolvent, or in contemplation of insolvency, shall, directly or indirectly, make any assignment, sale, transfer or conveyance, either absolute or conditional, of any part of his estate, real or personal, intending to give a preference to a preëxisting creditor, or to any person who is or may be liable as indorser or surety for such debtor, unless said debtor shall make it appear that, at the time of making such preference, he had reasonable cause to believe himself solvent ; and all preferences so made, or intended to be made, shall, as to the other creditors, be void ; and the assignees may recover the full value of the property so transferred, or the property itself, from the creditor so preferred : provided, the creditor, when accepting such preference, had reasonable cause to believe such debtor was insolvent." This provision restrains an insolvent debtor, who has no reasonable cause to believe himself solvent, from making, at any time within six months next preceding the institution of proceedings in insolvency against him, an effectual conveyance of any portion of his estate to a surety or preëxisting creditor who had reasonable cause to believe him to be insolvent. But it imposes no restraint upon the transfer or disposal of his property at an earlier period, nor does it interfere with the action of purchasers, in perfecting at a subsequent time the title to property, acquired by a contract of sale which the parties

Mitchell & another *v.* Black & another.

might lawfully make, and to which, when made, there was no legal objection.

If a conveyance of the wood and coal received by the defendants on the 31st of December had been made to them on that day by Perry & Mayo, it would undoubtedly, upon the state of facts then existing, which were equally known to both parties, have been unavailing against the assignees of the vendors. But Perry & Mayo did nothing at that time ; they merely acqui-esced in an act of the defendants, to which they could oppose no lawful resistance. By the bills of sale which had already been executed, they were divested of their property in the wood and coal, and ceased to have any right to exercise control over it, except upon performance of the condition subject to which it was to be held by the vendors. As against them, the title of the defendants, subject only to the right of redemption, was complete, and needed no confirmation ; and all that remained to be done, to make it perfect against other parties subsequently acquiring an interest in it, whether by purchase, attachment or assignment in insolvency, was to take actual possession of it before their rights intervened. This they could do at any time, whenever they found it convenient to enjoy the use of the property, or necessary to protect it from claims which might other-wise be legally established.

If the sale had been absolute in fact, as it was in terms, no one would doubt that they would have had the right to interfere and exercise an exclusive control over it, although there had never been any formal delivery of it. Yet the right of a party, who holds a chattel in pledge ·or in mortgage, is as strong and available as that of an absolute owner, provided it is followed up and protected by a timely and continued possession. *Carrington* v. *Smith*, 8 Pick. 419. *Adams* v. *Wheeler*, 10 Pick. 199.

There is a close analogy and resemblance between a pledge and a mortgage of personal property. In reference to the latter, by a series of legislative provisions, registration is made a substitute as well for a delivery, as for retention of possession. *Bullock* v. *Williams*, 16 Pick. 33. Had the conveyance to the defendants been by deeds of mortgage, instead of having been made by

the bills of sale which they received, neither actual delivery nor possession would have been required to perfect their title ; they might have relied upon the registration allowed by law. The time when the record shall be made is not specially prescribed, though it must undoubtedly precede the possession by others subsequently acquiring an interest in the mortgaged property. Rev. Sts. *c.* 74, § 5. To prevent it from passing to them, it will be sufficient that the record is made at any time before such possession is taken, though it be long after the execution of the mortgage. And if this is the effect of the record of a mortgage, which is nothing but an equivalent and substitute for possession, the like effect must be given to possession itself; for certainly the substitute can never be allowed to have a greater or more prevailing force than the principal thing in the place of which it is allowed to stand as a sufficient representative.

It was by taking such actual possession that the defendants undertook to protect their claims against the subsequently acquired title of other parties. In this they acted solely for themselves, without relying in any way upon the coöperation, or seeking in any manner for the consent, of their vendors. In the .anguage of the statute, they did not then " accept a preference," but asserted a right which they had previously acquired under a conveyance made when the parties to it were both competent to contract, and when there was no restriction on the right of the one to sell or the other to purchase. As the conveyances to them of the wood and coal were not, when they were made, in violation of the provisions of the statute, and as they obtained possession of it before the proceedings in insolvency were commenced against Perry & Mayo, the only interest in it with which the assignees of the latter were invested by the assignment was a right of redemption. As the jury have found that the value of the property is less than the amount due to the defendants for which it was pledged, the verdict which they rendered was correct, and judgment must be entered upon it.