## EMERSON–BRANTINGHAM IMPLEMENT CO. v. LAWSON.

### In re BROM. ,

(District Court, S. D. Iowa, E. D.    June 5, 1916.)

1. BANKRUPTCY ⬥⇒151—TRUSTEES—RIGHT OF.
    In the absence of preference or fraud, the trustee of a bankrupt, save as to an instrument reserving a lien on the bankrupt's estate unrecorded at the time the bankruptcy petition was filed, has only the same right as the bankrupt.
    [Ed. Note.—For other' cases, see Bankruptcy, Cent. Dig. §§ 193, 239; Dec. Dig. ⬥⇒151.]

2. COURTS ⬥⇒366(1)—PRECEDENCE—FEDERAL COURTS.
    The federal courts will, save in very exceptional cases, follow the construction placed upon the statutes of a state by the courts of last resort of the state.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 956, 957, 967; Dec. Dig. ⬥⇒366(1).]

3. BANKRUPTCY ⬥⇒188(2)—LIENS—PRIORITY—RIGHT OF TRUSTEE.
    Code Iowa, § 2905, declares that no sale, contract, or lease, wherein the transfer of title or ownership of personal property is made to depend upon any condition, shall be valid against any creditor or purchaser, unless recorded, while section 2906 declares that no sale or mortgage of personal property, where the vendor or mortgagor retains possession, is valid as against existing creditors or subsequent purchasers without notice, unless recorded. Claimant sold goods to a bankrupt under a contract of conditional sale, reserving title to itself, which contract was not recorded until a few days before the filing of the petition in bankruptcy. Held that, as the lien reserved by the conditional sale contract did not constitute 'a preference, and the trustee obtained no greater rights than those which would have been acquired by creditors who might have secured a lien by attachment or otherwise on the day of the filing of the petition in bankruptcy, the trustee could not question the lien of claimant; the exceptions of the Iowa statutes in favor of creditors not extending to general creditors, though their indebtedness accrued after the execution of the contract and before recordation, such a creditor having no priority until he shall have obtained the lien, by attachment or otherwise, without notice of the lien of the contract.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 292; Dec. Dig. ⬥⇒188(2).]

4. SALES ⬥⇒454—"CONDITIONAL SALE"—NATURE OF CONTRACTS.
    Contracts which reserve title absolutely in the vendor are not conditional sales, within the meaning of the Iowa recording acts, but are bailments; but a contract of sale, contemplating resale by the buyer, is a "conditional sale," and not a bailment. '
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1324, 1325, 1333, 1334; Dec. Dig. ⬥⇒454.
    For other definitions, see Words and Phrases, First and Second Series, Conditional Sale.]

5. SALES ⬥⇒461—CONDITIONAL CONTRACTS OF SALE—VALIDITY.
    An order for goods, reciting that it was subject to the conditions and agreements on the back, which was signed by the purchaser, bore on its back the statement that title to, ownership of, and right of possession of all goods shipped under the contract should be and remain in the seller until the same should be paid for. The goods were shipped under the

⬥⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

contract. *Held* that, as between, the parties, a valid conditional sale was created.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1349; Dec. Dig. ⊛461.]

6. SALES ⊛462—CONDITIONAL SALES—CREATION.
In such case, though a clause in the order declared that the contract was subject to the approval of the seller, and should not be binding unless accepted in writing by it, a valid conditional sale was created, where a salesman of the seller wrote that the same was accepted subject to the approval of the seller, and the seller showed its approval by delivering the goods.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1350; Dec. Dig. ⊛462.]

7. SALES ⊛472(2)—CONDITIONAL SALES—CONTRACTS—VALIDITY.
In such case, as the Iowa statutes fix no particular time for execution and recordation of such contracts, the validity of the conditional sale contract was not affected, because it was not acknowledged by the buyer or recorded until a considerable time after delivery of the goods; the contract being acknowledged and placed on record before the rights of creditors intervened.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1370; Dec. Dig. ⊛472(2).]

8. SALES ⊛477(3)—CONDITIONAL SALES—CONTRACTS—VALIDITY.
Where a seller reserved title by conditional sale contract, the fact that he thereafter secured additional security by chattel mortgages and notes, which were recorded, will not impair his security under the conditional sale contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1413; Dec. Dig. ⊛477(3).]

In Bankruptcy. In the matter of the bankruptcy of A. T. Brom, a claim by the Emerson-Brantingham Implement Company, was opposed by Ralph W. Lawson, trustee. Finding of referee reversed, and cause remanded for further proceedings.

R. C. Leggett, of Fairfield, Iowa, for claimant.
R. H. Munro, of Fairfield, Iowa, for trustee.
Leggett & McKemey, of Fairfield, Iowa, for bankrupt.

## The Issues.

WADE, District Judge. It is very important to consider the issues in this proceeding. Claimant files a petition, claiming possession of the property in the hands of the trustee under certain alleged contracts of conditional sale.

The answer is in six paragraphs, in the first, second, and third of which it is alleged that certain other creditors sold goods and extended credit to Brom without knowledge of any reservation of title by claimant; and I infer that it is the claim of the trustee that these creditors are entitled to equities in the property superior to the plaintiff's claim, based upon the fact that the contracts of conditional sale were not recorded. Paragraph 4 admits the delivery by claimant to Brom of the goods in controversy, but denies that they were delivered upon a conditional sale, and denies that any bill of sale was executed until February 17, 1915. Paragraph 5 alleges that on February 15, 1915, the

claimant procured notes for its indebtedness, and a chattel mortgage securing the same, which was recorded.  Paragraph 6 is in effect a general denial, except as to the receipt of the goods by Brom.

It will be observed that there is no claim of fraud in keeping the bills of sale from record, nor in any other way, and there is no claim of preference, and no claim of insolvency at the time the conditional contracts are claimed to have been made, and no claims of insolvency during the times when the creditors referred to in the first three paragraphs sold the property to Brom.  So that substantially there are but three issues in this case: (1) As to the validity of the alleged contracts of conditional sale; (2) did the fact that they were withheld from record give precedence to the claims of those who extended credit without notice?  and (3) whether the chattel mortgage executed on the 15th of February constituted a waiver thereof.  Waiver is not specifically pleaded; but I assume that that was the intention of the pleader, and the view of the referee in his ruling herein.

### The Validity of the Contracts.

[1-3]  Now, in considering whether these contracts relied upon by the claimant are valid or not, we must consider their validity as between the claimant and Brom.  The trustee stands in Brom's shoes, so far as the issues in this case are concerned.  The trustee claims no preference by Brom, and no fraud, and, in the absence of preference or fraud, the trustee has the right only of the bankrupt, except as to an instrument not recorded at the time the bankruptcy petition was filed, and this question might as well be settled at this point.

The answer seems to have been drawn under the ruling of the Court of Appeals of the Eighth Circuit, in Post v. Berry, 175 Fed. 564, 99 C. C. A. 186, and in Re Bothe, 173 Fed. 597, 97 C. C. A. 547, which hold that persons extending credit, with no knowledge of an unrecorded mortgage or bill of sale, are entitled to preference as against such mortgage or bill of sale.  These cases were decided by the Court of Appeals of this circuit, but In re Bothe did not involve the statutes of Iowa as to recording, but arose under the statutes of Missouri (Rev. St. 1909, § 2861), which expressly provide that:

"No mortgage [on] personal property * * * shall be valid against any other person than the parties thereto, unless possession of the mortgaged * * * property be delivered to and retained by the mortgagee * * * or unless the mortgage * * * be * * * recorded in the county in which the mortgagor * * * resides."

Post v. Berry arose under the statutes of Iowa, but I feel satisfied that in deciding this case the court overlooked the distinction between the statutes of Missouri and the statutes of Iowa, as construed by the highest courts of those states.  The courts of the United States will follow the construction placed upon the statutes of a state by the courts of last resort in such state, unless in very exceptional cases.  The statute of Iowa (section 2906) provides that:

"No sale or mortgage of personal property, where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers, without notice," unless recorded.

And section 2905 provides:

"No sale, contract or lease, wherein the transfer of title or ownership of personal property is made to depend upon any condition, shall be valid against any creditor or purchaser," unless recorded.

While the language is very general as to the word "creditor," it has been repeatedly held by the Supreme Court of Iowa that it does not mean a general creditor, not even though his indebtedness accrues subsequent to the execution of the unrecorded mortgage, but that, before a creditor can assert a right superior to the unrecorded instrument, he "must obtain a lien, as by attachment or otherwise, upon the mortgaged property, before notice, actual or constructive, of the mortgage." Murphy v. Murphy, 126 Iowa, 57, 101 N. W. 486. This case is followed in Orr v. Kenworthy, 143 Iowa, 6, 121 N. W. 539, 136 Am. St. Rep. 728, and is merely an expression of numerous decisions by the Supreme Court of Iowa.

It is settled in this state, beyond controversy, that a creditor, subsequent to an unrecorded instrument, has no equity, and has no right to assert a claim, superior to the rights accruing under the unrecorded instrument, unless before record he acquires a lien by attachment, execution, or otherwise. He has the right to allege that the unrecorded instrument was withheld from record as part of a fraudulent scheme to enable the mortgagor to procure credit, and that credit was extended by reason of such fraud, and the failure to record is a strong circumstance to be considered. But in this case there is no issue of fraud. There is no claim that during the time the instruments were withheld from record (assuming that they were valid) Brom was not perfectly solvent; nor is there any claim of any fraud or deceit of any kind whatsoever.

Post v. Berry seems to be the last expression of the Court of Appeals upon this question, construing the Iowa statute, and ordinarily it would be my duty to follow it without question; but since the decision of that case the Supreme Court of the United States has decided Bailey, Trustee, v. Baker Ice Machine Co., 239 U. S. 268, 36 Sup. Ct. 50, 60 L. Ed. 275, and Carey v. Donohue, Trustee, 240 U. S. 430, 36 Sup. Ct. 386, 60 L. Ed. 726, opinion filed March 13, 1916, both of which I think have strong bearing upon the questions involved; therefore I cannot follow Post v. Berry in the construction of the statutes of this state.

Now the conditional contracts were filed for record before the petition for bankruptcy was filed. The trustee in bankruptcy acquired no rights greater than those which would be acquired by creditors who, on the day that the petition in bankruptcy was filed, secured a lien by attachment or otherwise. Bailey, Trustee, v. Baker Ice Co., and Carey v. Donohue, Trustee, supra. If creditors of Brom had, on February 20, 1915 (the date of the filing of the petition in bankruptcy), procured an attachment and levied it upon the property (if the contracts are held valid), the creditors would have no rights superior to the rights of the claimant, because on that date they had notice by the record of the contracts recorded on February 17th, and in the absence of fraud the

claimant would be entitled to possession. Suppose a valid chattel mortgage were executed and recorded on the 17th of February, creditors certainly could not on February 20th levy an attachment which would take precedence thereof; and the trustee is vested only with the rights of such a creditor as of the date of the filing of the petition. Bailey, Trustee, v. Baker Ice Co., supra.

I am not overlooking the rights of the trustee to reclaim property transferred or mortgaged in preference of creditors, where the mortgage is not recorded within four months of the filing of the petition; but there is no claim of preference in this case. Construing, as I do, the conditional contracts as being in the nature of mortgages upon the property, there is no claim that at the times they were signed by Brom —October 29, 1913, March 23, 1914, and October 19, 1914—any preference was intended, or given, no claim that he was then insolvent, or that claimant had any suggestion of intended preference; and a valid mortgage, executed more than four months before the bankruptcy petition is filed, is valid as against the trustee, even though the same is not recorded until three days previous to the filing of the petition in bankruptcy.

There is no statute making void a valid mortgage not in preference, simply because the same is not recorded until within the four months period. Counsel do not assert any such claim. So now it will be seen that this case turns upon the validity of the alleged conditional sales.

### The Validity of the Conditional Sales.

[4-7] There can be no question but that the orders signed by Brom, and the delivery of the goods thereunder, constituted a conditional sale. Language could not be plainer:

"And it is agreed that title to, ownership of, and right of possession of all goods shipped under this contract, in case of loss, to the amount of the invoice price of goods destroyed, shall be and remain in said company until said goods are paid for in cash."

Similar contracts have been in use by other companies, and have been upheld, not as retaining the absolute title to the vendor, but as contracts holding title for security purposes only. I do not feel that these contracts come within the rule of the Baker Ice Machine Co. Case. There the court held that the title never passed; but that was a fixture sold for use, with the intention that the vendee should retain the same absolutely.

The goods in this case were sold with the view of resale by the vendee, and it was not the intention of the parties that the title should not pass to the extent that the vendee could pass title to the goods. The reservation was more in the nature of a lien for the purchase price. Singer Sewing Machine Co. v. Holcomb, 40 Iowa, 33; Wright v. Barnard, 89 Iowa, 168, 56 N. W. 424; Norwegian Plow Co. v. Clark, 102 Iowa, 40, 70 N. W. 808; Moline Plow Co. v. Braden, 71 Iowa, 143, 32 N. W. 247; National Cash Register Co. v. Zangs, 127 Iowa, 713, 104 N. W. 360. From these cases it will be observed that the Supreme Court of Iowa holds that contracts which reserve the title

237 F.—56

absolutely in the vendor are not conditional sales within the meaning of the recording act, but are bailments.

But it is contended that the contracts were never executed until February 17, 1915. This is true as to the full execution entitling them to record, but it cannot be questioned that, as between the parties, the contract was valid from the time the same was accepted by the claimant, and they were accepted by the claimant at the time the goods were shipped thereunder. The order signed by Brom was for goods, "subject to the conditions and agreements on the back hereof,. which are hereby made a part of this order and contract."

So that, as between him and the company, the delivery of the goods thereunder made the contract effectual. Suppose there was no bankruptcy here, and the claimant asserted its rights to possession—to exercise its right of lien—what defense would Brom have, even though the contracts were never acknowledged or recorded? Could he say, "I bought these goods absolutely, and they are mine," in the face of his order, which specifically reserves title in the vendor as security?

But clause 13 is pointed out, which provides:

"This contract is subject to the approval of Emerson-Brantingham Implement Company, and is not binding unless accepted in writing by it."

As I understand it (though the copy does not so indicate), it was accepted by the salesman writing his name under the heading, "Accepted subject to the approval of Emerson-Brantingham Company," and this was an acceptance in writing by the company through its agent. True, it was subject to the "approval" of the company; but I find nothing which requires such approval to be in writing. The receipt of the order, and the shipment of the goods, is sufficient evidence of approval, so that there was a complete, binding contract between claimant and Brom from the time of the shipment of the goods up to the time of bankruptcy.

As to the acknowledgment and recording, no time is fixed by the statute when this must be done, except that it shall be done before the rights of creditors attach. The statute requires that it "be in writing, executed by the vendor or lessor, acknowledged and recorded." There can be no question, if a man should execute a chattel mortgage, and deliver it, and get money borrowed upon the mortgage as security, that if, a year later, he acknowledged it, and it was recorded, the record would be good as to any subsequent attaching creditor. And so, in this case, the statute requiring the vendor—not the vendee (National Cash Register Co. v. Schwab, 111 Iowa, 605, 82 N. W. 1011; National Cash Register Co. v. Zangs, 127 Iowa, 711, 104 N. W. 360)—to acknowledge the instrument, when it was acknowledged and recorded, it gave notice to the world of the rights of the vendor, and that is the only purpose of recording.

### The Effect of the Chattel Mortgage.

[8] New notes and a chattel mortgage were accepted February 15, 1915, and the mortgage was recorded. Afterwards it was released. The contention as to the effect of this mortgage is not clear, but I as-

sume that it is pleaded as a waiver of any rights under the conditional bills of sale. The claimant contends that it was received by its agent without authority; but, even if he had authority, I do not see how the acceptance of additional security could in any manner affect the validity of the prior contracts reserving title as security. I can see, if the original contracts were merely contracts of bailment, where no title passed at all to the vendee, how the chattel mortgage might be material, as indicating an intent to waive the original contracts; but holding, as I do, that the original contracts were simply conditional for the purpose of security, I hold that they cannot be affected by the chattel mortgage, nor can the retention of the notes affect the contracts. In most of the cases above cited notes were taken for the property, and it was held that the acceptance of notes did not negative the retention of a lien for security, nor could the acceptance of renewals or new notes, affect the lien reserved.

The finding of the referee is reversed, and the cause is remanded to the referee for further proceedings consistent with this opinion.