OTIS BARBER,

*Plaintiff and Appellant,*

vs.

REINA NASH MOTOR COMPANY,

*Defendant.*

UNIVERSAL C. I. T. CREDIT CORPORATION,

*Intervener and Respondent,*

JACK D. EMERY,

*Receiver and Respondent.*

OTIS BARBER,

*Plaintiff and Respondent,*

vs.

REINA NASH MOTOR COMPANY,

*Defendant.*

UNIVERSAL C. I. T. CREDIT CORPORATION,

*Intervener and Respondent.*

JACK D. EMERY,

*Receiver and Appellant.*

(Nos. 2600 and 2601; September 8th, 1953; 260 Pac. (2d) 928)

66

For the plaintiff and appellant in case No. 2600 and for the receiver and appellant in case No. 2601 the causes were submitted upon the brief of Mahoney and Wilkerson of Casper, Wyoming, and oral argument by Mr. J. F. Mahoney.

For the intervener and respondent, Universal C. I. T. Credit Corporation, the causes were submitted upon the brief and also oral argument of Mr. Donald E. Chapin of Casper, Wyoming.

## OPINION

BLUME, Chief Justice.

These are cases involving the right to certain automobiles in controversy in this case which were awarded to the Universal C.I.T. Credit Corporation, intervener herein, and from the order to that effect the plaintiff, Otis Barber, and the receiver appointed in the case have appealed to this court.

The plaintiff commenced the action against the Reina Nash Motor Company, defendant herein, on May 27, 1952. He alleged in his petition the following facts to wit: That heretofore and on April 23, 1952, plaintiff loaned to defendant, Reina Nash Motor Company, the sum of $17,000 secured by a chattel mortgage;

that subsequent to the execution of the note and mortgage, the defendant, Reina Nash Motor Company, caused to be paid certain obligations then owing on motor vehicles thereby vesting unencumbered title to these vehicles in the defendant but that notwithstanding such payment certain parties repossessed and took possession of these vehicles illegally and without cause, thereby jeopardizing and endangering plaintiff's security under the chattel mortgage as aforesaid; that at the time of making the loan to the defendant, the latter represented to the plaintiff that the proceeds thereof would be used to satisfy all then outstanding obligations of the company and that the loan would be amply sufficient to satisfy all its obligations, but thereafter between the date of the loan and the filing of this petition numerous creditors have made claims on the defendant and in some cases have filed attachment and garnishment proceedings against corporate assets, including assets which the plaintiff claims as assets securing his loan; that the manager of said corporation has disappeared since May 20, 1952, and due thereto the corporation premises have been closed; that the corporate liabilities of the defendant are in the neighborhood of $65,000; that the defendant is insolvent resulting from misappropriation of the corporation's funds by some of the officers of the corporation; that the appointment of a receiver by the court is necessary for the purpose of conserving and marshalling the assets of the corporation and determining the claims against it, ratably pay said claims and determine what fraudulent acts and wrongdoings exist. Plaintiff accordingly prayed that the claim of plaintiff against defendant corporation be adjuged to be a first and prior claim on all assets of the corporation; that the receiver wind up the business of the defendant corporation; that he receive proof of the claims against it; that he carry

out any further functions proper in the case of a receiver.

The chattel mortgage mentioned in plaintiff's petition was on the appliances and all the equipment located on the premises owned by the defendant, but did not cover any automobiles.

On May 27, 1952, after the filing of the petition of the plaintiff, the court entered an order appointing Jack D. Emery of Casper as receiver of the defendant to take charge of the property of the defendant including books and records, chattels and assets and directing that the receiver should be vested with the usual power and rights of receivers appointed by the court. The receiver accordingly took possession of the property.

On June 10, 1952, the Universal C.I.T. Credit Corporation filed a petition to intervene in the action. Leave to intervene was granted by the court on June 16, 1952. Thereafter on June 18, 1952, the intervener filed its petition setting out three causes of action. This appeal involves only the second cause of action. In that cause of action, the intervener alleged that for a valuable consideration, the defendant executed to the intervener eighteen chattel mortgages in various amounts, the first being executed on February 20, 1952, and the last on May 16, 1952; that these mortgages were filed of record in Natrona County, Wyoming, on May 27, 1952, prior to the appointment of the receiver in this action, and that thereafter titles to those automobiles were issued to the defendant herein in accordance with the motor vehicle laws of the State of Wyoming, reflecting on the face thereof the lien of the intervenor; that no payment has been made on the mortgages although the demand has been made upon the defendant as well as the receiver and failure to pay the mortgages authorizes the intervener to take pos-

session of the chattels involved in these mortgages. The intervener accordingly prayed that the receiver deliver the possession of the automobiles covered by these mortgages.

Plaintiff answering the second cause of action of the intervenor admitted that the latter advanced funds to the defendant Reina Nash Motor Company for some of the automobiles but denied that to be true as to others; plaintiff admitted that the mortgages were filed as alleged by the intervener and denied that they were filed prior to the appointment of the receiver in the action. On July 22, 1952, the receiver appeared in the action and answered the second cause of action of the intervener in like manner as the plaintiff herein.

By agreement of the parties and the order of the court, the automobiles involved in the second cause of action of the intervener were sold and the money was deposited in court awaiting a determination of the court as to who should receive the amount realized from the sale of the chattels.

On August 18, 1952, the court heard the evidence in the contest between the intervener on the one hand and the plaintiff and the receiver on the other in connection with the second cause of action of the intervener. The court found that some thirteen chattel mortgages executed by the defendant to the intervener were valid and subsisting chattel mortgages and directed that the receiver pay to the intervener the sum of $10,000 realized from the sale of the chattels covered by these chattel mortgages. An order to that effect was entered by the court dated the 15th day of September 1952, and the plaintiff and the receiver have appealed as above mentioned to this court.

Testimony taken in the case is comparatively brief. It appears therefrom that the chattel mortgages in-

volved in the second cause of action of the intervener were executed on the dates heretofore mentioned and were filed on May 27, 1952 ,at about 10:30 in the forenoon of that date. The receiver herein was appointed on May 27, 1952, the exact time not appearing. The evidence further shows that the loan was made as plaintiff alleged, but that the value of the chattels included in plaintiff's mortgage is not great enough to pay the $17,000 loaned to the defendant, but falls short of paying the indebtedness due the plaintiff in the sum of about $5,000. By inference it may be gathered that the defendant corporation is in fact insolvent. The receiver introduced no evidence in the case but stated to the court before the close of the hearing above mentioned that he appeared for the purpose of representing all of the creditors, including attachment creditors, who have filed claims in this matter and that he had filed his answer to the intervener's petition for the purpose of challenging the validity of the intervener's mortgages.

The questions of law which we must determine are as to whether or not the chattel mortgages of the intervener, in so far as involved herein, are valid, first as against the plaintiff and attaching creditors herein, and second as against the receiver. The authorities are in hopeless conflict, and since the questions involved are comparatively new in this state, and no adequate annotation has been found, we have deemed it advisable, not only in order to obtain a comprehensive view of the points before us but also that the solution of future cases may be easier, to make a somewhat more critical analysis of the cases on the subject than is usually found. We might have avoided such critical analysis on the first point here involved, and relied largely on the texts on the subject, except for the fact, as will be noted hereafter, that it will shed considerable light on,

and enable us to more easily determine, the second which is the most important point in the case. Certain matters in connection with chattel mortgages considered in other cases need not be determined. Thus we shall assume that the mortgages involved herein were duly executed; that has not been questioned in the arguments of counsel herein. There is sufficient testimony herein that neither the plaintiff nor the receiver had notice of the chattel mortgages of the intervener. Furthermore, it is not necessary herein to distinguish between cases in which the chattel mortgagees took possession of the chattels and the cases in which the chattel mortgage was filed, and we shall assume that possession is equivalent to filing or recording the mortgage, and vice versa, although it is doubtless true that taking possession may cure defects which could not be cured by filing. Martin v. Holloway, 16 Idaho 513, 102 P. 3, 25 L.R.A. (NS) 110; Garner v. Wright, 52 Ark. 385, 12 S.W. 785; Security First Nat. Bank of Los Angeles v. Sartori, 34 Cal. App. (2d) 408, 93 P. (2d) 863; American Nat. Bank of Sapulpa v. Harris, 84 Fed. (2d) 181. Furthermore, while the plaintiff himself took a chattel mortgage on certain appliances and equipment these chattels are not sufficient to pay the indebtedness due him, and he claims to be a general creditor of the insolvent corporation to the extent of about $5,000, and we shall not question that any more than has been done by counsel in the case.

The statutes applicable herein are as follows:

Section 59-105, W.C.S., 1945, provides: "Every mortgage, bond, conveyance or other instrument intended to operate as a mortgage of goods, chattels or personal property, which shall not be accompanied by immediate delivery and be followed by an actual and continued change of possession of goods, chattels and personal property so mortgaged shall be absolutely void as

against the creditors of the mortgagor, and as against subsequent mortgages, or purchasers in good faith, unless said mortgage, bond, conveyance or other instrument intended to operate as a chattel mortgage shall be filed or recorded as hereinafter provided."

By Chapter 45, Session Laws of 1947, our legislature provided that a chattel mortgage on automobiles must be filed within five days. What effect that provision should have herein has not been argued, and we shall refrain from determining that point. Nor shall we, except in exceptional cases, point out the differences that exist in the statutes on the subject in the various states. They all have this fundamental point in common that they are designed to protect creditors and others against secret liens.

1. Rights of plaintiff and attaching creditors as against chattel mortgagees.

The cases on the subject, in so far as necessary to be considered here, appear to fall into three main groups. It is not always easy to determine into which group a certain case may fall and in some instances a court, after aligning itself with one group aligned itself with another by reason of a later statute.

The courts falling under the first group hold that though there is a delay in filing a chattel mortgage, nevertheless it is good between the parties and takes effect as against creditors from the time of filing. It is valid against all creditors, antecedent as well as subsequent, who have not, prior to the time of filing, acquired some kind of lien against the property by attachment or otherwise. If it is filed before any such lien is acquired, creditors cannot thereafter attack a duly executed chattel mortgage. Some nineteen states, and possibly more, hold that to be the rule. To cite all the cases on the subject would unduly lengthen this opinion.

We shall cite only a sufficient number to clearly show the application of the rule.

Moore v. Chilson, 26 Ariz. 244, 224 P. 818; Garner v. Wright, 52 Ark. 385, 12 S.W. 785; Bogdon v. Fort, 75 Colo. 231, 225 P. 247; McEwen v. Larson, 136 Fla. 1, 185 So. 866; Kettenbach v. Walker, 32 Idaho 544, 186 P. 912; Palo Sav. Bank v. Cameron, 184 Iowa 183, 168 N.W. 769; Emerson-Brantingham Implement Co. v. Lawson, (DC Iowa) 237 F. 877; Cameron, Hull & Co. v. Marvin, 26 Kan. 612; Campbell v. Killion, 124 Kan. 124, 257 P. 752; Martin v. Commercial Nat. Bank of Macon, Ga., (Ga. Law) 245 U. S. 513, 38 S. Ct. 176, 62 L. Ed. 441; Mitchell v. Black, (6Gray) 72 Mass. 100; Dickey v. Willis, 215 Mass. 292, 102 N.E. 336; Ellingboe (Ellingbor) v. Brakken, 36 Minn. 156, 30 N.W. 659; Howe v. Cochran, 47 Minn. 403, 50 N.W. 368; Forrester v. Kearney Nat. Bank, 49 Neb. 655, 68 N.W. 1059; Boyer v. M. D. Knowlton Co., 85 Ohio S. 104, 97 N.W. 137, 38 L.R.A. (NS) 224; Frick Co. v. Oats, 20 Okla. 473, 94 P. 682; First Nat. Bank v. Wegener, 94 Ore. 318, 186 P. 41; Carroll v. Cash Mills, 125 S. C. 332, 118 S.E. 290, 295; In re E. H. Webb Grocery Co. 32 F. Supp. 3 (Tenn. Law) ; Edmundson v. Scofield, 92 F. Supp. 91 (Texas Law) ; McLoud v. Wakefield, 70 Vt. 558, 43 A. 179; Gilfillan's Adm'r. v. Bixby, 100 Vt. 468, 139 A. 250; Hansen v. Daniels, 73 Utah 142, 272 P. 941; Wasatch Livestock Loan Co. v. Nielson, 90 Utah 307, 56 P. (2d) 613 (But see Volker Lumber Co. v. Utah & Oregon Lumber Co., 45 Utah 603, 148 P. 365) ; see also First Nat. Bank v. Haverkampf, 16 N. M. 497, 121 P. 31; 1 Jones, Chattel Mortgages and Conditional Sales, Bowers' Edition, § 247b (Jones Chattel Mortgages 6th Ed.).

The rule in Washington was formerly the same. Pacific Coast Biscuit Co. v. Oswald, 77 Wash. 352, 137 P. 483, overruling a former case. It is now different in

view of the fact that a more recent statute makes a creditor a lien creditor. See the Washington cases hereinafter cited. The foregoing rule was also the rule in Illinois prior to 1931 but has been changed since that time in view of a new statute that was passed at that time. The rationale of this rule was stated in Cameron, Hull & Co. v. Marvin, 26 Kan. 612, 627, 628, as follows: "Of course, a chattel mortgage not recorded of property not delivered is void as against all creditors who have no notice of the mortgage; but they have no right to or interest in any specific property until they have obtained this right or interest by some legal process. They have no more right to the property than the mortgagee has whose mortgage is void. They all have an equal right to the property—that is, they all have a right to procure a lien upon it or an interest in it by virtue of legal process, or chattel mortgage, or purchase; and the one who first acts will obtain the prior right in and to the property. If one of the creditors already has a chattel mortgage upon the property, he may file his mortgage or procure possesion of the property; and if he has done this with the consent of the mortgagor, he has certainly obtained the prior right to the property. The mortgagor has a continuing right to mortgage his property to secure his debts so long as he acts in good faith and does not mortgage property already mortgaged to others. He has a right to prefer one creditor over another; and he may prefer any one of his creditors over any of the others. And if the mortgagee, whose mortgage is not recorded, and who does not have possession of the property, records his mortgage with the consent of the mortgagor, or takes possession of the property with the consent of the mortgagor, his mortgage then has the force and effect of a mortgage executed on the day on which it is filed for record, or on which the property is delivered. It is the same then as though a new mortgage had been executed

by the parties and recorded. The old mortgage is then given life and force and effect by the joint action of both the parties, and hence must be held to be valid from that time on, as against all persons."

The courts falling within the second group hold that while a mortgage not filed is good between the parties, it is wholly void against creditors, antecedent as well as subsequent, unless the mortgage is filed promptly and within the time provided by statute. As in the cases under the first group, creditors to be able to attack a chattel mortgage must first acquire some lien on the property involved by attachment or otherwise, but that lien may be acquired, and the attack on the chattel mortgage made, either before the belated filing is made or at any time after the mortgage was actually filed. Some half dozen courts ,and possibly more, hold this to be the rule.

Roe v. Meding, 52 N. J. Eq. 350, 33 A. 394; Currie v. Knight, 34 N. J. Eq. 485; Osco Motors Corp. v. Martin, 137 N. J. Eq. 433, 45 A. (2d) 454; Karst v. Gane, 136 N. Y. 316, 32 N.E. 1073; Nucci v. McCollom, 194 Misc. 1025, 88 N. Y. S. (2d) 619; Greenberg v. Manganese Products, 39 Wash. (2d) 794, 238 P. (2d) 1194; Robinson, Thieme & Morris v. Whittier, 112 Wash. 6, 191 P. 763; Production Credit Ass'n. v. Kent, 143 Me. 145, 56 A. (2d) 631; Burdick v. Coates, 22 R. I. 410, 48 A. 389; Roudebush v. Nash, 93 Ind. App. 283, 177 N.E. 335; Collateral Finance Co. v. Braud, 298 Ill. App. 130, 18 N.E. (2d) 392; Simpson v. Harris, 21 Nev. 353, 31 P. 1009; Curtis v. Lewis, 74 Conn. 367, 50 A. 878, In re Wilcox & Howe Co., 70 Conn. 220, 39 A. 163; 1 Jones, supra, § 245a and b. The creditors involved in the Illinois case above cited were subsequent creditors, so that it may be that the case should be classified as falling under the following group.

The third group may be considered to be a modification of the second group. The cases under this group hold that antecedent creditors, that is to say creditors existing at the time of the execution of a chattel mortgage, must have a lien, just as in the cases falling in group one, before the mortgage is filed in order to be able to attack a belatedly filed mortgage. But subsequent creditors, that is to say creditors who extended credit after the execution of the chattel mortgage and before the filing thereof, may, upon acquiring a lien, attack the mortgage belatedly filed for record at any time, either before or after the chattel mortgage is filed. The courts of some seven states and possibly more adhere to this rule.

Ruggles v. Cannedy, 127 Cal. 290, 53 P. 911; Chelhar v. Acme Garage, 18 Cal. App. (2d) 775, 61 P. (2d) 1232; Landis v. McDonald, 88 Mo. App. 335; Pearson v. Lafferty, 197 Mo. App. 123, 193 S.W. 40; Union Nat. Bank v. Oium, 3 N. D. 193, 54 N.W. 1034; Hollenbeck v. Louden, 35 S. D. 320, 152 N.W. 116 (where the rule is stated clearly); Sanger v. Freie Presse Co., 73 Wis. 354, 41 N.W. 436; Wicks v. McConnell, 102 Ky. 434, 43 S.W. 205; In re Ducker, 133 Fed. 771 (Ky. Law); Ransom & Randolph Co. v. Moore, 272 Mich. 31, 261 N.W. 128; Deane v. Fidelity Corp. of Michigan, 82 F. Supp. 710.

It may be noted that all the courts (except Washington) agree that in order that a creditor himself may attack a chattel mortgage as invalid on account of belated filing, he must have acquired a lien by attachment or otherwise. 10 Am. Jur. 783, § 105; 14 C.J.S. 741, § 137; 14 C.J.S. 762, § 157. Of course, if a creditor has a lien, as required by the foregoing rules, his right takes precedence over the rights of the mortgagee. Consumers Credit Co. v. Manifold, 65 Idaho 238, 142 P. (2d) 150; Yelverton Hardware Co. v. W. A. Piland

&Sons Garage Co., 184 N. C. 125, 113 S.E. 601; Power Mfg. Co. v. Bailey, 33 Del. 129, 131 A. 696. In the case at bar the plaintiff never acquired any lien. He cannot acquire any now, after the appointment of a receiver. 75 C.J.S. 135, pp. 772, 773. The mortgages of the intervener here are, accordingly, valid as to him *personally*. But they are invalid as to an attaching creditor who attached the property covered by the mortgages before the latter were filed, but, of course, only to the extent that the property was attached.

2. Rights of receiver.

We must next consider the proposition as to whether or not the mortgages in question herein are valid as against the receiver appointed in the case. That involves the question as to whether or not the mortgagor was insolvent, of which there is, it seems, sufficient evidence in this case. There is no evidence in the record to show as to whether the mortgages involved herein were filed before or after the receivership was instituted. That point is of vital importance. Hence it is necessary, in order to come to any conclusion herein, to determine the rule applicable in either of these phases of the case. It is readily seen that the question is one of the larger question involving similar situations such as assignees of an insolvent party, trustees in bankruptcy and executors or administrators of an insolvent estate, so that cases decided on any of these situations are more or less in point, although when it comes to the point of bankruptcy, it must be borne in mind that the bankruptcy law af the Federal Government prohibits preference within four months, a question not involved herein. Aside from that the principle underlying all these situations, in so far as the point involved herein is concerned, is about the same, so that the rulings thereunder ought to be as harmonious as possible, although there is conflict as to an assignee for

the benefit of creditors. 10 Am. Jur. 785, § 108; 1 Jones, supra, § 244.

The general rule is that a receiver of an insolvent party takes the property in the same plight and condition and subject to the same equities and liens as existed against it in the hands of the person or corporation out of whose possession it was taken. 75 C.J.S. 753, 766; 45 Am. Jur. 129, § 156. However, it is said in 75 C.J.S. 1002, § 326: "The receiver of an insolvent estate in a suit for the administration of assets in which he represents all creditors may, by suit or defense, avoid a mortgage which is void or voidable at the suit of such creditors, or in a suit to foreclose a mortgage on the property of the estate he may answer in defense matters going to the invalidity of the mortgage as against the interest he was appointed to guard." See also 53 C.J. § 539 (2), p. 327. Many, if not most of the cases cited in the foregoing texts are cases in which the chattel mortgage was not filed before the receivership was instituted and these cases holds that an unfiled chattel mortgage is invalid as to the receiver. That, we think, is the general rule or at least the rule held by most of the courts. To the same effect as the cases cited in the foregoing texts are Harrison v. J. J. Warren, 183 Mass. 123, 66 N.E. 589, Yelverton Hardware Co. v. W. A. Piland & Sons Garage Co., 184 N. C. 125, 113 S.E. 601; Shooters Island Shipyard Co. v. Standard Shipbuilding Corp., 293 Fed. 706; First National Bank v. Salyer, 4 Okla. 408, 50 P. 76. That is in harmony with First National Bank v. Ludvigsen, 8 Wyo. 230, 56 P. 994, 57 P. 934, 80 Am. St. Rep. 928, where this court held that an unfiled, or unrenewed, chattel mortgage is void against the executor or administrator of an insolvent estate. See also 1 Jones, supra, § 242d. The logical theory on which these cases are based would seem to be (or should be) that

since a chattel mortgage is, under the statute, void as to creditors until or unless filed, and that, accordingly, the chattel mortgagee has no lien, as against creditors, until that time, the receiver, representing the creditors, receives the property covered by an unfiled chattel mortgage without a lien against it; his appointment cannot make valid a chattel mortgage void as against creditors (see Raney v. Riedy, 71 S. D. 280, 23 N.W. (2d) 809), and he, therefore, has the right to attack the mortgage as invalid, since creditors cannot do so after his appointment. That makes the rule here stated, not inconsistent with, but in harmony with, the general rule above stated that a receiver receives the property in the same condition in which he found it when it came into his possession. If the mortgage had been filed before the receiver was appointed, that, of course, would present an entirely different situation.

We have accordingly answered one half of the question before us namely, that if the mortgages were not filed before the receiver was appointed, they are invalid as to him. We pass then to the second half of the question, namely, as to whether or not the mortgages were valid as against the receiver if filed before the latter was appointed. Two different situations must be considered in this connection. If (a) the receiver represents creditors who had obtained a lien before the mortgages were filed, then the rule undoubtedly is that the mortgages are invalid as against him to the extent of the prior liens. That is consistent with, and carries out, the general rule above stated to the effect that liens against property are preserved when that property comes into his hands. The situation is different if (b) no such prior liens have been obtained. In that situation the cases are in hopeless conflict. Some of the cases falling under the second and third groups of cases above mentioned hold that the representative of the

creditors may attack the mortgage, and have it declared invalid in the same way that the creditors might have done even after the mortgage is filed, if not filed promptly or within the time fixed by statute. Thus it is said: "And, by the appointment of a receiver, the rights of creditors to attach or levy upon such property are suspended. * * * The law thus disables the creditors from interfering with that property, * * *. But, in so doing, it does not lessen their rights with respect to such property, nor does it destroy them; it merely provides for their protection and enforcement in another way. And whenever the law thus disables creditors from helping themselves, whether by proceedings in insolvency or bankruptcy, or by the appointment of a receiver, or otherwise, it provides for the enforcement of whatever rights they may possess against the property of the debtor through the instrumentality of its agent, the trustee, assignee, or receiver." In re Wilcox & Howe Co., 70 Conn. 220, 39 A. 163, 167. If the "rights" of creditors here mentioned is construed broadly, including the ability or power of a creditor to create a lien, then it seems logical enough that when a chattel mortgage has not been filed within the time required by law that the representative of the creditors has a right to attack it even after it is filed. And it seemingly has been so held. Stephens v. Meridan Britannia Co., 160 N. Y. 178, 54 N.E. 781, 73 A.S.R. 678; Ruggles v. Cannedy, 127 Cal. 290, 53 P. 911. dissent in 59 P. 827; and perhaps Hollenbeck v. Louden, 35 S. D. 320, 152 N.W. 116; and see also Brown Grain Co. v. Coughlin, 53 S. D. 66, 220 N.W. 151; Volker Lumber Co. v. Utah & Oregon Lumber Co., 45 Utah 603, 148 P. 365 (contrary to later ruling). See also Graham Button Co. v. Spielmann, 50 N. J. Eq. 120, 24 A. 571; Osco Motor Corp. v. Martin, 137 N. J. Eq. 433, 45 A. (2d) 454; In re Sachs, 30 F. (2d) 510 (Maryland Law) ; Goldstein v. Rusch, 54 F. (2d) 86 (New

York Law). And perhaps other courts hold likewise. The court in Osco Motor Corp. v. Martin, supra, p. 459, reasons thus: "A creditor, whose debt was subsisting at the time of the giving of a chattel mortgage, may, by subsequently obtaining a judgment and levying on the property mortgaged, place himself in a position to attack the chattel mortgage, * * *, and the debts of creditors at large are fastened on the property of an insolvent corporate debtor by an adjudication of insolvency and the appointment of a receiver. Such a receiver stands in the rights of the creditors of the mortgagor, and he is, consequently, entitled, as their representative, to the same relief that would be given to them in a suit instituted by themselves in their own names." In Ruggles v. Cannedy, supra, the court reasons that the allowance of claims in the receivership is equivalent to a judgment.

Now let us turn to the cases in conflict with the foregoing cases. The rule applied or that would be applied by the nineteen or more courts falling under the first group above mentioned is clear. They hold, as already stated, that a creditor has no right to attack a chattel mortgage (duly executed), but the filing of which has been delayed, unless he has acquired a lien prior to the time that the mortgage is filed. The creditor has no rights left if the mortgage is filed before he attempts to acquire such lien. A representative of the creditors, such as a receiver, can have no greater right than such creditors. Carroll v. Cash Mills, 125 S. D. 332, 118 S.E. 290; Jones v. Bank of Excelsior Springs, 201 Mo. App. 545, 213 S.W. 892. It follows logically that the courts falling under this group would necessarily hold that if the receiver representing creditors without a lien is not appointed until after the mortgage is filed, he cannot thereafter attack the mortgage, and it remains valid as to him. We are not without actual

decisions on the point. Thus in Munck v. Security State Bank, 175 Minn. 47, 220 N.W. 400, the court held that unless a receiver represents a creditor with a lien, a chattel mortgage cannot be assailed by him. That too was the holding (involving a conditional sale) in Delaware Trust Co. v. Elder & Co., 12 Del. Ch. 263, 112 A. 370. The rule was applied as to an executor or administrator in Beery v. Glynn, 214 Iowa 635, 243 N.W. 365. It was also applied as to a trustee in bankruptcy in Martin v. Commercial Nat. Bank of Macon, Ga., 245 U. S. 513, 38 S. Ct. 176, 178, 62 L. Ed. 441, where the court speaking of the Georgia Law said: "And we think it properly follows that before a trustee may avoid a transfer because of the provision in question he must in fact represent or be entitled to take the place of some creditor whose claim actually stood in a superior position to the challenged transfer while unrecorded and within the specified period. The Georgia statute imposes the requirement of registration only in favor of a creditor who fixes a lien on the property before recording takes place. Here there is no such person; the trustee occupies the status of one who acquired a lien after that event. No one concerned in the distribution of the estate actually held rights superior to the mortgage while off the record." In re Schilling, (DC Ohio) 251 F. 972, 974, (dealing with Ohio Law), the court stated: "* * * an immediate delivery or possession is not indispensable to the validity of a chattel mortgage as between the parties thereto, and (that) the title of the mortgagee is superior to creditors and subsequent purchasers, if the mortgagee takes possession at any time before a creditor has fixed a lien thereon by levy of an attachment or execution." To that effect is Bonner v. First Nat. Bank, (Texas) 248 F. 692, 160 CCA 592; Emerson-Brantingham Implement Co. v. Lawson, (Iowa) 237 F. 877; Finance & Guaranty Co. v. Oppenhimer, 276 U. S. 10, 48 S. Ct. 209, 72 L. Ed. 443,

(Va. Law) ; Firestone Tire & Rubber Co. v. Cross, 17 F. (2d) 417 (South Carolina Law), and Bogdon v. Fort, 75 Colo. 231, 225 P. 247. See also In re Hopkins (DC Wyo.) 1 F. (2d) 394. The rule of these cases is sustained by cases falling under the second and third groups above mentioned, particularly those involving a trustee in bankruptcy. Missouri belongs to the third of the foregoing groups, as already noted. In Jones v. Bank of Excelsior Springs, 201 Mo. App. 545, 213 S.W. 892, 893, it was said that the trustee in bankruptcy has the status of a lien creditor only as of the date when the bankruptcy proceedings were begun. The court then stated: "In the present case we have seen that bankruptcy proceedings were begun on July 14, 1915, and at that time the mortgagee had been in possession of the merchandise for nearly three weeks, no creditor (judgment creditor, or other kind) having placed a lien thereon before he took possession, and the trustee not bringing this action for near a year thereafter. The mortgagee's claim was therefore superior to the claims of judgment and other creditors; and, as the trustee's claim is measured by that of the creditors whom he represents, it follows that he has no claim as against the mortgagee. This is the view taken in Bonner v. First National Bank, 248 Fed. 692, 160 C.C.A. 592, and In re Capital City Cap Co. (D.C.) 251 Fed. 664."

Michigan, too, is a state belonging to the third group heretofore mentioned. And the same result was reached in that state as in the Missouri case. The statute itself, it is said, does not give a lien to a creditor. Peter Schuttler Co. v. Gunther, 222 Mich. 430, 192 N.W. 661; Riverside Machinery Depot v. American Steel Supply Syndicate, 232 Mich. 22, 204 N.W. 766; Detroit Trust Co. v. Pontiac Savings Bank, 237 U. S. 186, 35 S. Ct. 509, 59 L. Ed. 907, construing the Michigan Law. The later Michigan case of Ransom & Randolph Co. v.

Moore, 272 Mich. 31, 261 N.W. 128, is not inconsistent with these cases, since in that case the creditor had obtained a lien before the proceedings in bankruptcy, so that that case merely states the rule that a representative of creditors may assert the rights of a lien creditor. In the case of Ryder v. Ryder, 19 R. I. 188, 32 A. 919, a chattel mortgage failed to fully describe the property intended to be embraced therein. The court held that the mortgage could be reformed so as to embrace the property intended, and that the receiver had no greater rights than the mortgagor. But see In re Kenyon, 52 R. I. 298 ,160 A. 918. See also Perkins v. Meier & Zobelein Brewery, 133 Cal. 496, 65 P. 1030; Decennial Digest, Chattel Mortgages, § 197.

While there is a conflict in the cases, it would seem, in so far as we have been able to ascertain, that some twenty-one or twenty-two or more courts hold or would hold that a receiver cannot attack a chattel mortgage filed before he was appointed, except in so far as he represents creditors with a lien and who obtained that lien before the mortgage was filed. We are inclined to think at this time that that should be our holding here, and that we should not deal too harshly with a mortgagee who without intent to defraud, as seems to be true in this case, is somewhat negligent in filing his mortgage. It may be that future experience in this state with chattel mortgages, particularly chattel mortgages on automobiles, will show that the ruling should be otherwise and the ruling can then be changed, or the legislature can enact a statute similar to that in the state of Washington which makes a general creditor a lien creditor. So far as the plaintiff is concerned, there is another matter to be considered. The theory on which it is held, by at least some of the cases as already noted, that a receiver may attack a chattel mortgage, is because by the appointment of such re-

ceiver the creditor is disabled from obtaining a lien himself. Plaintiff was disabled from obtaining a lien after the appointment of the receiver, but he himself brought his petition for such appointment, and he thus personally disabled himself from obtaining a lien. It is doubtful that he should be heard to complain of such disablement, and that a receiver in so far as he represents him, should be able to attack the mortgages for the plaintiff's benefit, if the mortgages were in fact first filed, although we think that the prevailing rule that a receiver may attack it if appointed before the filing of the mortgage should be the rule even in such case.

We arrive, accordingly, at the following conclusion:

Since there was no evidence on the point, the case must be remanded to the district court to determine whether the mortgages were filed before or after the appointment of a receiver, the burden of proof being on the party seeking to recover possession of the property from the receiver. If the mortgages were filed before such an appointment, they should be held valid as to all parties who did not obtain a lien before such filing; they must be held invalid if the receiver was appointed before the mortgages were filed. Even if the mortgages were filed before the receiver was appointed, they must be held invalid as to attaching creditors who attached any of the property involved herein prior to the time of such filing, and to the extent of the lien so obtained.

*It is so ordered.*

RINER, J., and HARNSBERGER, J., concur.